## THOMAS MONAGHAM v. STATE.

### No. A-1868.   Opinion Filed August 14, 1913.

### (134 Pac. 77.)

1.  **APPEAL**—Continuance. The granting or refusal of a continuance in a criminal case is largely a matter of discretion of the trial court, and this court will not reverse the trial court on the question of a matter which rests in the sound discretion of the court, unless it is shown that there has been an abuse of discretion.

2.  **ROBBERY**—What Constitutes—Evidence. To constitute "robbery," as distinguished from "larceny from the person," there must be force, violence, or intimidation in the taking. Therefore, where there is no evidence tending to show that the defendant obtained or retained the personal property alleged to have been taken by force and violence or by putting in fear, the crime is grand larceny, and not robbery, and a verdict of guilty of robbery in the first degree is contrary to law and the evidence.

3.  **SAME.** Merely snatching the property from the person of another, without violence or putting in fear, is not robbery, except where there is some injury or violence to the person of the owner, or where the property snatched is so attached to the person or clothes of the owner as to afford resistance.

4.  **SAME**—Elements. The force and violence which is essential to the crime of robbery must be concomitant with the taking of property from the person of another.

5.  **TRIAL**—Instructions—Question of Fact—"Presumption of Innocence." The jury are bound to take the law from the court, and questions of fact are to be decided by the jury. The charge of the court must not invade the province of the jury, and should not extend beyond a plain statement of the law applicable to the case. Philosophic disquisition on the "presumption of innocence" or dissertation upon the nature of evidence should always be omitted.

*Appeal from District Court, Craig County;*

*Preston S. Davis, Judge.*

Thomas Monaghan was convicted of robbery, and appeals. Reversed.

*O. L. Rider,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson* and *C. J. Davenport,* Asst. Attys. Gen., for the State.

DOYLE, J.   This appeal is prosecuted from a conviction had in the district court of Craig county, in which the defendant was found guilty of robbery in the first degree, and sentenced to imprisonment at hard labor in the penitentiary at McAlester for a term of ten years. The judgment and sentence was rendered and entered on the 17th day of June, 1912. The appeal was perfected by filing in this court December 11, 1912, a petition in error with case-made attached. The Attorney General has filed a motion to strike the case-made and consider this appeal on the transcript of the record, because said case-made was not served on the county attorney within the time allowed by the trial court. The record shows that at the time of entering judgment the court extended the time for making and serving case-made 60 days, and thereafter on the 27th day of July granted an additional extension of 60 days, and thereafter on the 17th day of October granted an additional extension of 60 days, and that the case-made was served on the county attorney on the 21st day of November, and was settled and signed on the 7th day of December. The certificate of the trial judge recites:

"I do hereby certify that the within and foregoing case-made, and the amendments thereto, have been served in due time, and the same duly submitted to me for settlement and signing, as required by law."

Thus it appears that the orders extending the time for making and serving the case-made were in addition to the statutory time of 30 days as provided by section 6951, Comp. Laws 1909, Rev. Laws 1910, secs. 5994-7. The motion to strike is therefore overruled.

The information charged, in substance, that on or about the 19th day of December, 1911, the said Thomas Monaghan, did willfully, unlawfully, and feloniously, with force and violence, take from the person of one J. E. Armstrong, and against his will, personal property, to wit, $2.50, and one railroad passenger ticket from Vinita, Okla., to Boonville, Mo., of the value of $6.50, said personal property then and there being in the possession of said J. E. Armstrong, with the intent on the part of him the said Thomas Monaghan to then and there rob the said J. E. Armstrong.

The testimony in the case was substantially as follows:

J. E. Armstrong, the complaining witness, testified: That he lived in Cooper county, Mo., and came to Vinita on the Katy Flyer on the 19th day of December, and while waiting at the depot to take the 4 o'clock train to Blue Jacket, he was talking to several fellows there and was drinking "right smartly." That he went to sleep and caught the defendant trying to steal something from him, and a short time after that he was in the closet with his clothes unloosed, and while he was unbuttoning his suspenders, the defendant "socked" his hand into his pocket, and said: "God damn you; give me that pocketbook"—and he got the pocketbook and got away from him. That he had too much whisky to defend himself, or he could not have got away so easy. That he followed him a little piece, and saw two fellows starting after him, and he hallooed to them: "Arrest him! He robbed me"—and they caught him. That there was a $5 bill and a little change and a ticket from Vinita to Boonville, Mo., in the pocketbook. That he did not consent to the defendant's taking his pocketbook. That they put him in jail, but released him the next morning. On cross-examination he stated that he was drinking when he arrived at Vinita; that he had a little square grip with a quart of whisky, a jar of honey and some cakes in it, and he had a bottle of whisky in his pocket; that he gave the defendant and one or two others a drink of whisky in the toilet room; that he did not know how many drinks he gave the defendant; that he also visited some negro joints across the track near the depot; that when they drank his

whisky the fellow with the defendant wanted him to give him a dollar to get some more whisky, and he told him he did not have any money.

J. W. May testified that he saw the defendant running from Armstrong, and followed him with a fellow named Pyatt, who caught him about 300 yards from the depot; that Pyatt let him go, and said, "I seen him throw something out of his pocket as he came around that corner"; that witness then took Armstrong to jail.

Jake Smith testified that he was present when the sheriff arrested the defendant, and heard them say that a man was robbed, and went to see if he could find anything, and found a pocketbook with a ticket in it to Boonville; that a fellow named Pyatt gave him directions where to look.

Charles A. Davidson testified that he saw witness Armstrong near the depot so drunk he could hardly stand; he hallooed that he had been robbed, "Catch him," and a man that he did not know caught the defendant and threw him down; that the defendant had a knife in his hand, and he ran over and took the knife away from him.

Lee R. Mitchell, clerk of the district court of Craig county, over the defendant's objection, was permitted to identify a subpoena issued to the sheriff of Muskogee county, commanding W. B. Pyatt to appear as a witness for the state in the case on trial, together with the signed order of the court for W. B. Pyatt to appear, and the return of the sheriff of Muskogee county, showing that said W. B. Pyatt was not found in said county.

C. Caldwell, county attorney of Craig county, testified that the W. B. Pyatt named in said subpoena is the man referred to as Pyatt by the witness who testified, and over the defendant's objection was permitted to state on Monday last "I finally got in communication with Mr. Pyatt, in Muskogee, and endeavored to get him here as a witness." Thereupon the defendant moved that the statement be withdrawn from the consideration of the jury. The motion was overruled; the court saying to the jury that:

"This testimony is only permitted and will only be considered by the jury as showing or tending to show what effort the county attorney made to get this witness. That's the sole purpose of this particular testimony, and you will consider it for no other. The defendant may have an exception."

H. E. Ridenhour, sheriff, testified that when he arrested the defendant, he had one dollar in silver and three half dollars.

On behalf of the defendant, G. A. Whitney testified: That he was with the defendant in the waiting room of the depot, and the complaining witness Armstrong invited them to go in the toilet and have a drink with him; and they went with him, he had a four-ounce bottle of whisky, and they drank it up. Armstrong then said: "I would buy some more, but I have only got 15 cents." That he had a little telescope, and they opened it up and it had a little can of something and a big black bottle. That they had been in there about 20 minutes when witness left. That he saw the defendant have $2 or $3 in his hand at a drug store just before they went to the depot.

The defendant, as a witness on his own behalf, testified: That he went to the depot with Whitney, and they went into the smoke-room and sat down. Armstrong was talking to a couple of negroes, and then commenced a conversation with Whitney. They got up and went into the closet, and Armstrong produced a bottle of whisky, and they drank it. Armstrong said he wanted to eat a little, and that he had a lunch in his grip, and asked us to open it for him, and we found a bottle of whisky and a little jar of jam and some cakes. That Armstrong commenced eating the cakes, and witness said to Whitney, "I am going to get that bottle of whisky." That Whitney left, and he then slipped the bottle of whisky into his shirt, and a man named Bowen came in and Armstrong pulled another bottle of whisky out of his pocket and they all drank. That he then went out and hid the bottle of whisky that he had taken from the grip under the depot, and then went back to the closet. As he went in Bowen came out, and Armstrong followed him out, saying he had been robbed, and he ran because he thought he meant that he was robbed of his whisky. That a fellow named Pyatt caught him and knocked him down, and he took his knife out and made him turn him

loose. That Davidson came and took the knife away from him, and he started across the street, and the sheriff arrested him. He denied taking the pocketbook or anything except the bottle of whisky.

It is contended, first, that the court erred in denying the motion for continuance made when the case was called for trial. The affidavit contained all the formal allegations, required by law, and is in part as follows:

"That the defendant on the 20th day of May, 1912, caused subpoena to be issued for Ed Bowen, who lives at Bartlesville, on which subpoena was indorsed an order of the court commanding attendance of said witness; that the return of the sheriff of Washington county this day filed is 'not found in my county'; that the said Ed Bowen, if present, would testify that at the time of the alleged robbery the said Armstrong and this defendant and the said Bowen were at the Missouri, Kansas & Texas depot, in Vinita; that this defendant and Bowen and the said Armstrong were in the toilet drinking, and no robbery occurred during said time; that this defendant left said toilet, and that the said Bowen and said Armstrong remained therein; that about 15 minutes later this defendant returned, and just as this defendant was entering the said toilet room, said Bowen left the same, and was immediately followed by said Armstrong; that said witness, if present, would also testify that the said Armstrong told him he had no money, and would have to borrow some from W. H. Kornegay in order to get to Blue Jacket, and that this defendant prior to going to said depot had money amounting to about $2.50; that the facts set forth are true, and that he cannot prove them by any other witness; that if he is granted a continuance, he can secure the testimony of said Bowen by the next term of this court, and that the said Bowen is not absent by the advice, procurement, or consent of affiant."

No rule is more fully established than that this court will not reverse a judgment of the trial court upon the ground that it refused to grant a continuance, unless it appears that such court has manifestly abused its discretion in refusing it. We think the affidavit does not disclose such diligence on the part of defendant to procure the attendance of this witness as made it the duty of the court to grant the continuance.

The principal question presented is the sufficiency of the evidence to sustain the verdict and judgment. It is not pretended that the prosecuting witness was put in any fear of injury to his person, and there was no evidence conducing to show that the defendant obtained or retained possession of the pocketbook by force and violence.

Section 2364 (Rev. Laws 1910) of our Penal Code defines robbery as follows:

"Robbery is a wrongful taking of personal property in the possession of another from his person or immediate presence and against his will, accomplished by means of force or fear."

Section 2365, *Id.,* provides:

"To constitute robbery, the force and fear must be employed either to obtain or retain possession of the property, or to prevent or overcome resistance to the taking. If employed merely as a means of escape, it does not constitute robbery."

Section 2366, *Id.,* provides:

"When force is employed in either of the ways specified in the last section, the degree of force employed is immaterial."

Section 2655, *Id.,* defines grand larceny as follows:

"Grand larceny is larceny committed in either of the following cases: First. When the property taken is of value exceeding twenty dollars. Second. When such property, although not of value exceeding twenty dollars in value is taken from the person of another."

The larcenous taking of property from the person of another constitutes grand larceny, except when the taking is accomplished by either force or by putting in fear; it is then robbery. Says Bishop:

"Every robbery requires either actual violence inflicted on the person robbed, or such demonstrations or threats as under the circumstances create in him reasonable apprehension of bodily injury." (2 Bish. New. Cr. Law, par. 116.)

Says Wharton:

"The snatching a thing is not considered a taking by force, but if there be a struggle to keep it, or any violence, or disruption, the taking is robbery, the reason of the distinction being that, in the former case, we can infer neither fear nor the intention violently to take in face of resisting force. If putting in fear

be proved, the offense is robbery. And so where the thing is torn from the person,. as an earring from the ear." (1 Wharton, Cr. Law, par. 854.)

"The violence or intimidation in robbery must precede or be contemporaneous with the taking of the property. The violence which constitutes an essential element of the crime of robbery must be actual, personal violence, but the degree of force used is immaterial, except under statutes which provide for a punishment varying with the violence which accompanies the taking. All the force that is required to make the offense a robbery is such force as is actually sufficient to overcome the victim's resistance. The mere snatching of an article from the person of another, without violence or putting in fear, is not robbery, except where there is some injury or violence to the person of the owner, or where the property snatched is so attached to the person or clothes of the owner as to afford resistance." (34 Cyc. p. 1799, and cases cited.)

The prosecuting witness was the only person to testify to the circumstances attending the taking of the pocketbook. He admitted that he was helplessly drunk at the time, and his examination discloses the fact that he only knew that the pocketbook was taken against his will. His testimony also shows that he was not only violating the prohibition law of the state, but also the federal law, prohibiting the introduction of whisky into the Indian country. The subsequent struggle of the defendant with other persons in attempting to escape cannot be considered to determine whether the taking was forceful or furtive. It would seem, and we would suggest, that always in a case of this character, where the line of demarcation between offenses, as in this case, has a very narrow margin, the safe practice, where the proof may be uncertain, is to charge the lesser offense. Upon a careful review it is our opinion that the evidence did not show either force or fear in the taking of the property in question, and that the crime charged was not proved.

The charge of the court contains 21 instructions, and submitted only the issue of robbery in the first degree. The rules of law applicable to a case of this character are simple and plain, and the practice of incumbering the record with so many useless instructions is of doubtful propriety, and ought not to be encouraged.

The instruction on the presumption of innocence concludes with the following disquisition:

"But the court charges you that the presumption of innocence is not evidence, and does not partake of the nature of evidence, and that it remains with the defendant only until it is overcome by competent evidence, which convinces your minds of his guilt beyond a reasonable doubt."

The defendant's counsel contends that by this statement "the court completely destroys the presumption of innocence." Our Procedure Criminal provides, section 5875 (Rev. Laws 1910):

"A defendant in a criminal action is presumed to be innocent until the contrary is proved; and, in case of a reasonable doubt as to whether his guilt is satisfactorily shown, he is entitled to be acquitted."

The "presumption of innocence" is founded upon the first principles of justice; it is the same presumption of law which obtained in behalf of the accused at common law. It is a principle so just, and so undoubted and universal, as to stand upon the recognition of all the times wherever the common law is respected. Our statute provides, as a rule of law, the state's burden of proof beyond a reasonable doubt, and the presumption of innocence will, therefore, sustain the burden of evidence until the defendant is proven guilty by the evidence beyond a reasonable doubt. While the presumption of innocence is not evidence in the true sense, it may in a sense be called "an instrument of proof" or something "in the nature of evidence," in that it determines from whom evidence shall come, and it should continue to have its logical weight in the case, not only during the taking of the testimony, but during the deliberations of the jury until they have arrived at a verdict. The defendant is entitled in every instance to an instruction on the presumption of his innocence, and that the state must prove the charge against him beyond a reasonable doubt. The jury are bound to take the law from the court, and questions of fact are to be decided by the jury. The charge of the court must not invade the province of the jury, and should not extend beyond a plain statement of the law applicable to the case. Philosophic disquisition on the presumption of innocence or dissertation upon the nature of evi-

dence should always be omitted. We think that the jury could be easily confused and misled by the qualifying statement in the instruction "that the presumption of innocence is not evidence, and does not partake of the nature of evidence." Ordinarily they would understand the court to mean that the presumption of innocence amounts to nothing, and that they should only consider any inference of the fact of innocence that may arise upon the evidence. In other words, that they should not consider that the defendant was presumed to be innocent. It may also be construed as a comment upon the weight of evidence. The law requires the court, not only to abstain from positive expression as to the weight of the evidence, but to avoid even the appearance of an intimation as to the facts, and to so guard the language of its charge to the jury, which is the law of the case, that no inference, however remote or obscure, may be drawn by the jury as to the weight of the evidence. It is our opinion that the exception to the instruction was well taken.

In view of the fact that the judgment must be reversed for the errors already indicated, we deem it unnecessary to enter into a discussion of the other questions raised.

For the reasons indicated the judgment appealed from is reversed. The warden of the penitentiary is directed to deliver the defendant to the sheriff of Craig county, who will hold him in custody until he shall be discharged therefrom, or as otherwise ordered according to law.

ARMSTRONG, P. J., and FURMAN, J., concur.