## HENRY SMITH v. STATE.

No. A-2859.    Opinion Filed June 9, 1919.
Rehearing Denied May 10, 1921.
(197 Pac. 514.)

(Syllabus.)

1.    **New Trial—Prejudice of Juror.**    Where a new trial is asked for upon the grounds that a juror who served upon the jury was prejudiced against the defendant, which prejudice was unknown to the defendant prior to rendition of the verdict, to entitle the defendant to a new trial, it must not only be shown that the said juror was prejudiced, but it must also appear that the defendant suffered an injustice by reason of the said juror having served upon the said jury.

2.    **New Trial—Conduct of Jury—Prejudice.**    While this court does not approve of a juror, while serving as such, having conversations by phone with outside persons, and with "janitors," or other persons than the jurors, being in the jury room with the jury without the authority of the court and consent of the defendant, to entitle the defendant to a new trial on account thereof, it must be made to appear that an injustice was done the defendant by such conversations, and by the presence of other persons than jurors in the jury room, and thereby the defendant deprived of a fair and impartial trial.        ,

3.    **Homicide—Self-Defense—Aggression—Withdrawal.**    Where the deceased brought on the difficulty, but in good faith withdrew therefrom and fled, and the defendant pursued, overtook, and inflicted a fatal wound upon the deceased, the defendant cannot successfully plead self-defense.

4.    **Homicide—Manslaughter in First Degree—Evidence.**    The record in this case carefully read and examined, and the evidence found, though in conflict, to reasonably sustain the ver-

dict and judgment rendered thereon, and that no prejudicial
error occurred in the trial of the case.

Appeal from District Court, Tulsa County; Jno. Y. Murry,
Jr., Special Judge.

Henry Smith was convicted of manslaughter in the first
degree, and he appeals.    Affirmed.

The plaintiff in error, Henry Smith, hereinafter desig-
nated defendant, was informed against for the murder of B.
V. Cook, convicted of manslaughter in the first degree, and
sentenced to imprisonment in the penitentiary at McAlester
for the term of 25 years, and adjudged to pay the costs of
this prosecution.    To reverse the judgment rendered, he prose-
cutes this appeal.

The uncontradicted evidence is that on the 21st day of
February, 1914, the deceased and defendant became involved in
a difficulty in which the defendant cut the deceased with a
knife four times; that the deceased walked to his home, which
was near by, and on the same day was sent to a hospital in
Tulsa, where he had good treatment and greatly improved,
and was removed in an automobile from the hospital to a hotel
in Tulsa, and on March 4, 1914, suddenly died.

The physician who treated said deceased and who made
the post mortem examination, described the knife wounds
upon the deceased, and testified that the said knife wounds
were the cause of the death of the deceased, that he died from
an embolus in the heart, which was caused by said knife
wounds.

The evidence is in irreconcilable conflict as to the facts
surrounding the difficulty.    On the part of the state the ma-
terial evidence is that the deceased and defendant disagreed
about a small tract of land, and on the day of the difficulty
the deceased went to where the defendant was, which was

near the home of the deceased, and they apparently engaged in an argument, a fight ensued, and the deceased knocked the defendant down and afterwards held him down, and then deceased got up and ran, and defendant ran after, caught up with him in about 40 or 50 yards, struck him in the back, and deceased fell backwards, and defendant stabbed him in the chest; that deceased at his home, and about 10 or 15 minutes after the difficulty, said, in reply to a suggestion about taking his boots off, "that he did not want to die with his boots on; that he did not think he was going to last long," and said:

"I had better tell you how this happened. I went down to show Smith the papers that I had this land rented or leased. Smith struck at me, and I threw up my hand, and he caught me across the eye. I hit him with my fist and knocked him down. I was over him, and he caught me around here on the left side. I started to run, and the next thing I knew I run quite a ways, and something hit me in the back and knocked me down and numbed me, Smith jumped on me, I says, 'Smith let me go; I will give up;' and Smith says, 'I know you will give up when I get through with you.'"

The only person who saw the difficulty between the defendant and the deceased and who testified in the case as to how said difficulty occurred, other than witnesses who testified for the state, were the defendant and his son, who testified that the defendant went over to the place, to see about the work on the place, went to the drill first, and then north over to where the defendant had some cane hay, tore the fence down, and started home from there, and after he got up the hill the deceased came out of his house and came facing the defendant and said, "Hold on, Smith," and the defendant kept going, and deceased caught up with him and said, "Stop, Smith, I want to settle this matter with you"—to which the defendant replied that he hadn't any settlement to make. "If you have got any, just take it to the judge. You have run

over me since I have been farming this place." And deceased replied "that he had a right to go where he pleased," and defendant said "he did not mean that; he meant you have turned your stock out and eat up what I raised every year;" that deceased said "he lied," and struck at him with a wrench; that the defendant threw up his left hand, and deceased hit him over the thumb; defendant grabbed at the wrench, missed it, and deceased hit him over the head, and he was running backwards and fell down, and that when he was falling that he pulled out his knife, and when the deceased got on him, he went to sticking him, and that after deceased knocked him down he (deceased) tried to hold him down with his left knee, and struck him several times with the wrench; that when he was down on his knees deceased struck him on the left side of the head, shoved him backwards, and got on top of him; that defendant did not cut deceased until after deceased struck him; that deceased's knees slipped, and he fell astride the defendant, and defendant then caught the wrench, and with both hands jerked it away from the deceased, and deceased got up and kicked him a time or two, and defendant got up and struck at deceased with his left hand, and defendant went one way and deceased the other way; that he did not chase deceased; that when he got up defendant took the wrench home with him, and that it was similar to the wrench shown now; that deceased had never indicated any ill will or ill nature towards him whatever. The defendant further testified that he had been in the penitentiary at Jefferson City two years but that he did not recollect now what for, and that at the time deceased had him down and was endeavoring to strike him with the wrench he had fears that if he did not cut deceased, that he (defendant) would receive great bodily harm.

A witness for the defendant testified that he was a physician, a graduate of the P. & S. of Texas; that he had heard the evidence of the physicians who were witnesses for the state in the case and could not give it as his opinion that

the death of Cook was due to the wounds in his lungs, and that the wounds produced the embolus that was found in the right side of deceased's heart, and which the physician making the post mortem examination gave as the cause of death.

The court, among other instructions, gave the following instruction, to which the defendant excepted:

No. 18. "Although the jury should believe from the evidence the deceased began the difficulty by attacking the defendant and striking him on the head and body with an iron wrench, but further believed that thereafter, and before the fatal blow was struck, deceased had in good faith abandoned the difficulty and had made known the fact to defendant by fleeing from him, and that at the time said fatal blow was struck the defendant was in no danger, either real or apparent, of suffering death or great bodily harm at the hands of the deceased, then and in that event you cannot acquit the defendant upon the ground of self-defense."

The defendant sought a new trial upon the ground that the juror Wheat was prejudiced, and that the jury and the bailiff in charge of the jury were guilty of misconduct. The particular ground alleged as constituting disqualification of said juror was that he was prejudiced against the defendant, and had also expressed an opinion as to the guilt of the defendant prior to serving as a juror. Affidavits of two persons who were engaged in the barber business in the city of Tulsa, together with the oral testimony of such witnesses, was had in support of the motion, while in opposition thereto the juror Wheat testified positively that he had not expressed an opinion as to the guilt or innocence of the defendant prior to his service, and that he did not know anything of the facts prior to the trial. He also denied that he had any prejudice against the defendant personally which in any wise affected his verdict.

The particular grounds alleged in the motion as constituting the misconduct of the jury and bailiff were that others

than the jurors were in the jury room with the jury, and that members of the jury had phoned from the jury room to parties outside of the courthouse. The evidence on the hearing of the motion was that the son of one of the jurors and another young man were, prior to the final submission of the case, for from one-half to three-quarters of an hour, in the jury room, and that they were there by authority of the court and the consent of an attorney of the defendant, and that janitors were in the sleeping room of the jury, adjoining the jury room, for a short time, attending thereto, and that during said time said persons were in the jury room, and said janitors were in the sleeping room, not anything was said about the case, and that the phoning from the jury room had no reference whatever to the case.

After hearing the evidence, both in support and in opposition to the motion, the court overruled the same, to which action of the court the defendant interposed an exception.

G. C. Spillars, Frank Z. Curry, and Charlton & Farrell, for plaintiff in error.

S. P. Freeling, Atty. Gen., and R. McMillan, Asst. Atty. Gen., for the State.

ARMSTRONG, J. (after stating the facts as above). While the evidence is in conflict as to the facts of the difficulty between the deceased and the defendant, and also as to whether or not the knife wounds inflicted by the defendant upon the deceased caused his death, and whether the defendant acted in self-defense, the determination of the facts was exclusively for the jury, and there being evidence—though the evidence was in conflict—to reasonably support the verdict rendered, this court, as held by an unbroken line of its decisions, is precluded from disturbing it.

The eighteenth instruction of which the defendant complains correctly states the law, and is free from error.

Conceding that the deceased brought on the difficulty by striking the defendant with a wrench, if the deceased in good faith thereafter withdrew from the difficulty and fled from the defendant, and the defendant pursued, overtook, and inflicted upon the deceased the fatal knife wound, and, at the time said fatal wound was inflicted the defendant was in no danger, either real or apparent, of death or great bodily harm, at the hands of the deceased, he certainly could not successfully invoke the doctrine of self-defense. The law of self-defense is a rule of necessity, and can only be invoked in the justification of a homicide in order to prevent an actual or reasonably apparent infliction of death or great bodily harm upon the slayer, and the necessity must be imminent at the time of the killing and not prior thereto. Marshall v. State, 11 Okla. Cr. 52, 142 Pac. 1046.

If the deceased abandoned the difficulty in good faith and fled, and the defendant pursued, overtook, and inflicted upon him a fatal wound, the defendant became the aggressor, and could not successfully plead self-defense. Smith v. State, 14 Okla. Cr. 250, 174 Pac. 1107.

"Where the assailant retreats in good faith, and the assaulted 'person pursues and kills him with a deadly weapon, the killing cannot be justified as in self-defense." Gransden v. State, 12 Okla. Cr. 417, 158 Pac. 157.

In the case of Smith v. State, 5 Okla. Cr. 283, 114 Pac. 355, it is said:

"The mere fact that two parties attempted to impeach a juror does not by any means settle the question of credibility as between such parties and the juror. If it did, but few verdicts could be sustained, because in almost any case it would be possible to find two or more persons who would make affidavits impeaching a juror. In passing upon this very question, the Supreme Court of Texas, in the case of Gilleland v. State, 44 Tex. 357, said: 'It is true that there are two affidavits in support of the motion and one in rebuttal,

but we do not think that the decision of the question presented by the motion should necessarily depend upon the mere number of affidavits on one side over the other.' The question of credibility was one to be determined by the trial court, and, in the absence of a showing that this discretion was abused, it cannot be reviewed here.''

The only remaining question presented by this appeal is upon the motion for new trial. Is Wheat shown to have been such a disqualified juror, or that others than the jurors being in the jury room, or phoning from the jury room, as shown by the evidence, to so prejudicially affect the defendant as to work a reversal of this case? It is certainly true that under the Constitution and laws of this state the defendant must be accorded a fair and impartial trial, and the impartiality of the jury goes to the very foundation thereof, but in order to prevail in a motion for a new trial on account of the prejudice of a juror serving on the jury in the trial of the case, it must not only be shown that the juror was prejudiced against the defendant, but it also must be made to appear from the whole case that the defendant suffered an injustice from the fact that the juror so served. There is evidence, though in conflict, sufficient to establish the guilt of the defendant beyond a reasonable doubt of the offense of which he was properly convicted, and we are unable to see that it appears from the whole record that the defendant was denied a fair and impartial trial by reason of Wheat having served upon his jury.

In the case of Horton v. State, 10 Okla. Cr. 294, 136 Pac. 177, it is held:

''As a general rule, a verdict will not be set aside for reasons that would be sufficient to disqualify a juror on a challenge for cause, which existed before the juror was sworn, but which was unknown to the defendant until after conviction, unless it appears from the whole case that the defendant suffered injustice from the fact that the juror served in the case.''

"As a general rule, the finding of the trial court upon an issue of fact arising upon affidavits and evidence adduced on a motion for a new trial will not be disturbed, where the evidence reasonably tends to support such finding."

In the case of Smith v. State, 5 Okla. Cr. 283, 114 Pac. 350, it is held:

"Where, in a motion for a new trial, an attempt is made to show that one of the jurors who sat in the case was prejudiced against the defendant, and affidavits are attached to the motion for a new trial supporting this charge, and the state replies with affidavit from the juror denying such prejudice and controverting the statements made in the affidavits filed against him, this presents a question of fact to be determined by the trial court, and in the absence of a showing of abuse of discretion in this matter the judge's determination of this question of fact will not be disturbed by this court upon appeal."

The evidence discloses that those temporarily in the jury room—other than the janitors—were there by authority of the court and the consent of the defendant and certainly the defendant cannot consistently urge as reversible error that which he consented to be done. Evidently the janitors, who were temporarily in the sleeping room of the jurors, could not, under the evidence, have in any way aided in causing the conviction of the defendant, or resulted in injury to him. While we do not approve of jurors while held in their room communicating with outside persons by phone, or with others than the jurors being in the jury room without the authority of the trial court and consent of the defendant, we are unable to see how, under the evidence in this case, the phone conversation had resulted in such injustice to the defendant, and to be such a denial of a fair and impartial trial as to entitle the defendant to a reversal.

In Coats v. State, 101 Ark. 51, 141 S. W. 197, it was held:

"It was not misconduct for jurors to hold conversations with outside persons where nothing was said about the case."

It has been uniformly held by this court that on matters of discretion the decision of the trial court will not be set aside unless there appears to have been a manifest abuse thereof. Spradlin v. State, 13 Okla. Cr. 376, 164 Pac. 990; Monagham v. State, 10 Okla. Cr. 89, 134 Pac. 77, 46 L. R. A. (N. S.) 1149; Bethel v. State, 8 Okla. Cr. 61, 126 Pac. 698; Perkins v. Territory, 10 Okla. 506, 63 Pac. 860.

The evidence in support of the motion and in opposition thereto was directly in conflict and it was peculiarly within the province of the trial court to determine who he would believe and who disbelieve. All the witnesses appeared in open court and testified, and it would be presumptuous upon this court to substitute its judgment on the weight and credit to be given to evidence where the same is conflicting and a less opportunity is afforded to judge of the surrounding circumstances under which such evidence was adduced. We cannot say, therefore, that there was a manifest abuse of discretion upon the part of the trial court in overruling this motion such as should result in a reversal of this judgment of conviction.

We are of the opinion that the court did not abuse its discretion in overruling the motion for a new trial.

The judgment of the trial court is affirmed.

DOYLE, P. J., and MATSON, J., concur.