**Jackie Eugene ROBERSON, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–14076.**

Court of Criminal Appeals of Oklahoma.

Oct. 4, 1967.

On Rehearing Feb. 7, 1968.

Thomas H. May, Tulsa, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Dale F. Crowder, Asst. Atty. Gen., for defendant in error.

BRETT, Judge:

This is an appeal by Jackie Eugene Roberson, hereinafter referred to as defendant, from a conviction in the district court of Tulsa County, on a charge of assault with a deadly weapon, after former conviction of a felony. Defendant was tried to a jury, found guilty, and his punishment fixed at 50 years in the state penitentiary.

Defendant's motion for a new trial sets out 13 errors. He lists 14 errors in his petition in error, which are argued under three propositions in his brief.

The facts briefly stated are: the defendant was involved in an automobile accident in the city of Tulsa, on March 14, 1966 at the intersection of 46th Street North, and Cincinnati Avenue. As the result of the accident, three criminal charges were filed against him and reached the district court.

Defendant was charged as follows: Case No. 21913, assault with a deadly weapon; case No. 21914, carrying a firearm; and case No. 21915, possession of burglary tools, each charge alleging further, "after former conviction of felony". Subsequently, the charge of possession of burglary tools was dismissed.

On the day of the accident, C. H. Rawlinson, an off-duty Tulsa police officer, was at a laundry he owned and operated near the intersection where the accident occurred. He walked to the scene of the accident to render any aid possible, and discovered that two automobiles were involved; and that the injured persons had been taken into a nearby Gulf Oil Company service station until the ambulance arrived.

Officer Rawlinson observed the defendant's car resting up on the curb, and that

the defendant was sitting in it. He testified that the defendant started and raced his motor, in an effort to move it; that he went over and told the defendant not to leave the scene of the accident. About that time, Deputy Sheriff Jerry Quinton, a plain-clothes officer, arrived. A few minutes later the defendant got out of his car, walked across the street towards a Skelly Service Station, located at the same intersection, and as he did so he appeared to be holding something under his belt. Officer Rawlinson and Deputy Quinton followed him across the street, and as Rawlinson entered the station, the defendant approached the rest-room door. As the defendant was about to to enter the rest-room, Deputy Quinton identified himself to the defendant, and advised him that he would have to accompany him inside the rest-room. The defendant replied that no one was going in the rest-room with him; and attempted to close the door, but the deputy prevented it by placing his foot in the way. Officer Rawlinson and Deputy Quinton then proceeded to shove the door open, with Rawlinson entering the rest-room first. As he went inside, Rawlinson reached for the defendant's right hand, and in doing so grasped a pistol, which the defendant was holding, and which was pointed at Rawlinson's stomach. About that instant the pistol hammer snapped, but caught Rawlinson's right fore-finger which prevented the gun from firing. After a brief struggle, the pistol was taken from the defendant, and he was placed in hand-cuffs.

When the Tulsa Police arrived, the defendant was turned to their custody, and the pistol was given to Sergeant King, of the Tulsa Police Traffic Division. Sergeant King testified that he removed the ammunition clip from the pistol, which contained four rounds, and one shell from the chamber of the pistol. This pistol and ammunition were introduced into evidence and identified by the witness, as being a German-made P-38 pistol.

Deputy Sheriff Quinton corroborated the story told by officer Rawlinson, and testified that he identified himself to the defendant when the defendant was just inside the rest-room, when the defendant turned to face him, and while the door was still open about 18 inches.

Defendant's first contention of error is that the court erred in allowing the State to introduce into evidence a certain P-38 automatic pistol and certain testimony concerning the same, over the objections of the defendant, when it was clearly shown that said pistol and said evidence were obtained through an illegal arrest and search of the defendant.

A motion to suppress the evidence was introduced at the preliminary hearing in the Court of Common Pleas, and was overruled. In the District Court, at defendant's trial, a "motion to suppress" was filed with particular reference to the P-38 automatic pistol; and attached to the motion was a transcript of testimony taken at the preliminary hearing. The motion was sustained as to case No. 21915 (possession of burglary tools), but was denied as to the other two charges. The State elected to proceed to trial in case No. 21913 in which defendant was charged with the crime of assault with a deadly weapon, after former conviction of felony. The trial commenced on June 6, 1966.

After carefully reviewing the record before the Court, we are of the opinion that defendant's first contention of error is without merit.

Title 47 Okl.St.Ann. § 10–102, provides:

"(a) The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 10–104. Every such stop shall be made without obstructing traffic more than is necessary.

"(b) Any person wilfully, maliciously, or feloniously failing to stop, or to comply with said requirements under such cir-

cumstances, *shall be guilty of a felony* and upon conviction thereof be punished by imprisonment for not less than ten days nor more than one year, or by a fine of not less than $50 nor more than $1,000, or by both such fine and imprisonment." (Emphasis added)

And Title 22 Okl.St.Ann. § 196, provides:

"A peace officer may, without a warrant, arrest a person 1. For a public offense, committed or attempted in his presence. * * *"

■ There is no dispute whatsoever that this defendant was involved in an automobile accident as alleged; and that some of the persons involved in the accident were taken to the hospital in an ambulance. Likewise, it is sufficiently shown that the defendant conducted himself in such manner as to cause the off-duty policeman, C. H. Rawlinson, and Deputy Sheriff Jerry Quinton to have sufficient cause to believe the defendant was attempting to commit a felony, to-wit: to leave the scene of an accident involving personal injury. This cause resulted when defendant started and raced his automobile motor and attempted to move it, after which he got out of his automobile and walked across the street, away from the location where the other persons involved in the accident were assembled. Therefore, we must conclude that the officers were justified in following and arresting the defendant.

■ Having determined that the arrest was justified, the seizure of the P–38 automatic pistol was also justified, and the trial court did not err in admitting the pistol into evidence. In the early case of Yeager v. State, 43 Okl.Cr. 318, 278 P. 665, this Court said:

"Where a person is legally arrested for an offense, whatever is found upon his person or in his control, which may be used to prove the offense, may be seized and held for evidence in the prosecution."

This case has been quoted with approval in Love v. State, 49 Okl.Cr. 7, 292 P. 882; Jones v. State, Okl.Cr., 426 P.2d 377, and other cases.

■ This Court will not reverse a trial court upon findings of fact in connection with a motion to suppress the evidence where there is competent evidence in the record reasonably tending to support the findings of the trial court. It follows therefore, that the motion to suppress the evidence, and defendant's demurrer to the evidence were properly overruled.

Defendant's second proposition is that the trial court erred in overruling his application for commitment to the Eastern State Hospital for mental examination, to determine the question of his present sanity.

The record shows that this case was originally set for trial on the May docket in the district court, but on May 5th it was passed to the June docket. At that time the public defender, Tony Waller, who had represented the defendant up until that time, requested and was permitted to withdraw from the case, insofar as the defendant had employed T. H. May to represent him.

On June 6, the case was called for trial, both sides announced ready for trial, the jury was empaneled and the court adjourned for lunch. When court reopened, the attorney for defendant called the court's attention to the fact that the defendant's motion for commitment to the Oklahoma Eastern State Hospital for mental observation had not been acted upon.

After considerable discussion, concerning defendant's motion, the court asked the attorney for the defendant: "The question is, I ask you, is there any question in your mind his counsel, about this man's ability to aid in his own defense?" Mr. May, defense Counsel, answered: "Your Honor, I am not an expert on this and I don't know it to be true or not at this time. At this time, no. As of March something, I didn't know the defendant at that time."

With reference to present sanity of the defendant, Title 22 Okl.St.Ann. § 1172, provides:

"In the event the District Court determines that there is a doubt as to the present sanity of the individual, he shall be ordered committed to a State Hospital, and the proceedings against such individual shall be further suspended pending the report of the doctors of said hospital."

An unverified application for commitment to the Eastern State Hospital for observation was filed by the Public Defender on defendant's behalf on May 5, 1966. No affidavits or sworn testimony was offered in support of the application, and the application was not supported by any positive facts to sustain the same. Further, the application was not called to the attention of the court until after the parties had announced ready for trial, and the jury had been empaneled.

Nothing occurred at the beginning of the trial to create a doubt in the mind of the court, concerning defendant's present sanity. And, apparently, nothing had occurred prior thereto to create a doubt in the mind of the defense counsel, for when he was asked by the court· if there was any doubt in his mind as to defendant being able to assist in his trial, counsel answered, "At this time, no." The public defender, who filed the unverified application, stated that he had intended to have defendant's aunt testify concerning this point, but she was not present at the trial.

As we review the record, we are of the opinion that this contention of defendant is wholly without merit.

Defendant's third proposition is that one of the jurors, Mr. F. R. Baumgarten, was not a competent juror by reason of the fact that he was—at the time of trial—president of the board of trustees of the town of Speery, Oklahoma; and that such office entailed the responsibility of being the city police court judge, and that this fact was not known to the court, or to the defendant, until eight days after the

trial. He states that this prevented the defendant from having a fair trial.

This question was not raised by defendant until he filed his motion for a new trial ten days after the verdict was returned, and on the date set for pronouncing judgment and sentence. Defendant attached to his motion for a new trial an affidavit signed by the juror, which admitted the fact. However, we observe that the juror's duties in that respect are incidental to his principal duties as president of the board of trustees, and as such do not necessarily disqualify him per se.

We observe also that the record does not contain the examination of the jurors on their voir dire, and this Court cannot say what answers the jurors gave, when examined as to their qualifications. As far as the record shows, no objection was made to Mr. Baumgarten, as to his qualifications to sit on this jury.

It was the duty of the counsel to examine the jurors on voir dire and discover by proper investigation the facts affecting their qualifications, and then to seasonably raise any objection that might exist as to any member of the panel. In order for the defendant to predicate error on account of the affidavit of the juror Baumgarten, it would be necessary for the record to show affirmatively that said juror had been examined on voir dire and had stated under oath that he was not biased or prejudiced, and was not such officer as named and set out in the statutes. This record contains no recital of such examination. A defendant must exercise all the rights he has under the statute to find out whether or not the juror is incompetent or disqualified; and it is supposed on the voir dire examination counsel for defendant would go thoroughly into the qualifications of the jurors, and if it developed that any juror was disqualified by reason of any statutory ground that a challenge for cause would be made and sustained.

It was stated by this Court in Cooper v. State, 27 Okl.Cr. 278, 226 P. 1066 (quoted

with approval in Allen v. State, 70 Okl.Cr. 143, 105 P.2d 450):

"It is the duty of the defendant to question the jurors on their voir dire as to their qualifications, and if he fails to do so, he waives any objections on that point, even though the disqualification is unknown to him until after the rendition of the verdict."

See also: Stouse v. State, 6 Okl.Cr. 415, 416, 119 P. 271; Smith v. State, 19 Okl.Cr. 14, 197 P. 514; Dixon v. State, 56 Okl.Cr. 454, 42 P.2d 286; Jennings v. State, Okl. Cr., 339 P.2d 792.

No showing of probable injury appearing, this contention offers no sufficient reason for a reversal of the judgment and sentence.

The record discloses that in his charges to the jury, the trial court gave full and complete instructions on every legal phase of the case, without a single objection by defense counsel, who failed to suggest any further or different instructions or charges. We find the issues were fairly submitted to the jury, and we find no legal grounds to interfere with the judgment rendered.

In McCormick v. State, Okl.Cr., 277 P.2d 219, we said:

"It is the duty of appellate courts to seek to uphold the judgments of trial courts if such can be done within the law. And where evidence points unmistakably to the guilt of an accused, technical matters not involving the deprivation of the accused of his fundamental or constitutional rights, standing alone, should have no weight in the outcome of a case.

The judgment and sentence of the district court of Tulsa County is affirmed.

NIX, P. J., and BUSSEY, J., concur.

## ON RE-HEARING

BRETT, Judge.

On October 4, 1967 this Court affirmed the conviction of the plaintiff in error, hereinafter referred to as "defendant", wherein he had been convicted of the offense of assault with a deadly weapon, after former conviction of a felony. At the conclusion of his trial, the jury assessed punishment at confinement in the state penitentiary for a period of fifty years.

Thereafter, the matter has been submitted for reconsideration on petition for re-hearing, under the rules of this Court.

The petition for rehearing alleges the punishment is excessive, and is in violation of the statutes; that the charge was laid under Title 21 O.S.A. § 645; that the record is void of any showing of "intent to kill", on the part of the defendant; and that the sentence should be modified in accordance therewith.

In reviewing the information in this case, it appears to have been laid under § 645 of Title 21. The two sections which might be applicable are sections 645 and 652. Section 645 provides for the offense of assault with a dangerous weapon "with intent to do bodily harm", and provides a maximum sentence of five years imprisonment. Section 652 provides for the offense of assault with any kind of firearm "with intent to kill", and provides for maximum punishment not to exceed twenty years confinement in the state penitentiary.

The pertinent parts of the information filed in this case in part, recite:

"INFORMATION FOR ASSAULT WITH A DEADLY WEAPON.

"* * * that Jackie Eugene Roberson * * * did * * * commit an assault on one C. H. Rawlinson with a 9 mm P–38 automatic pistol, * * * which he wrongfully and intentionally pointed, aimed and attempted to shoot the said C. H. Rawlinson, with the unlawful and felonious *intent* then and there *to do him bodily harm,* * * *." (Emphasis added)

The jury returned a verdict on the first stage of defendant's trial, which reads as follows:

"We, the jury, drawn, impaneled and sworn in the above entitled cause, do

upon our oaths find the defendant Jackie Eugene Roberson guilty *as charged* in the information herein." (Emphasis added)

Considering the charge laid in the information, which alleges *intent to do bodily harm,* we can only conclude that the information was drawn under the provisions of Title 21 O.S.A. § 645. Considered therewith the verdict of the jury, the verdict found defendant guilty of the charge as contained in the information. We acknowledge also that the district attorney's office candidly admits the lack of evidence to prove defendant's intent to kill.

On the second stage of defendant's trial, the jury found him guilty of the charge of former convictions, and assessed his punishment at fifty years confinement in the penitentiary.

Title 21 O.S.Supp. (1963), § 51 provides authority for enhancement of punishment. That section provides in part:

"Every person who, having been convicted of any offense punishable by imprisonment in the penitentiary, commits any crime after such conviction, is punishable as follows:

"* * * 2. If such subsequent offense is such that, upon a first conviction the offender would be punishable by imprisonment in the penitentiary for five years, or any less term, then the person convicted of such subsequent offense is punishable by imprisonment in the penitentiary for a term not exceeding ten years."

We are, therefore, of the opinion insofar as the information was laid under the provisions of Section 645, supra, that the above provision of the statutes is applicable, and that defendant's contention of excessive punishment is valid.

We are further of the opinion, in order that justice will be better served, that the sentence imposed in defendant's case, should be and the same is modified from

fifty years to ten years, this being the maximum permissible under the law.

Judgment and sentence as modified is affirmed.

BUSSEY, J., concurs.