## J. E. SPRADLIN v. STATE.

No. A-2399.    Opinion Filed May 15, 1917.

(164 Pac. 990.)

1. **APPEAL AND ERROR—Discretion of Trial Court—New Trial—Prejudice of Juror.** Where, in a motion for new trial on the ground that one of the jurors who sat in the case was prejudiced against the defendant, evidence is introduced both in support of and in opposition thereto, a question of fact is presented to be determined by the trial court. In the absence of a showing of abuse of discretion in this matter the judge's determination of this question of fact will not be disturbed by the court on appeal.

2. **SAME.** Where the evidence in support of a motion for a new trial, on account of the prejudice of a juror within the definition of actual bias, is clear and convincing, and the rebuttal evidence is doubtful and evasive, the refusal of the trial court to grant a new trial under such circumstances amounts to an abuse of discretion such as will authorize this court to reverse the judgment of conviction.

*Appeal from District Court, Bryan County;*
*Jesse Hatchett, Judge.*

J. E. Spradlin was convicted of embezzlement, and he appeals. Reversed.

W. E. Utterback and V. B. Hayes, for plaintiff in error.

S. P. Freeling, Atty. Gen., and R. McMillan, Asst. Atty. Gen., for the State.

MATSON, J. Among other assignments of error it is alleged that the court erred in overruling the appellant's motion for a new trial. This motion was based upon several grounds, some of which we deem it unnecessary to discuss. Among others was the ground that one of the jurors, to wit, Frank Lewis, who sat in the case and acted as foreman of the jury, had, previous to his selection as a juror, expressed, in effect, an opinion that the defendant was guilty of the offense charged against him, and also had disclosed a state of mind which showed that he was biased and prejudiced against this defendant personally, and that discovery of such prejudice was not made by counsel representing accused until after the jury had been selected and sworn and the trial was in progress. The trial progressed continuously, and was concluded in one day.

While counsel should have called this matter immediately to the attention of the court, and are subject to criticism for not so doing—is the fact that such was not done sufficient of itself to authorize this court to ignore the alleged fact that this juror was prejudiced and attribute the laches of counsel to the accused himself? It may be asserted that to reverse a judgment under these circumstances places a premium upon perjury and encourages deception and misconduct on the part of sworn officers of the court. However true that may be, where

the granting of a new trial for such reason rests within the sound discretion of the trial court, this court will not reverse the judgment of conviction, unless it appears clearly that there has been an abuse of such discretion. We have no apprehension of our ability to control such matters. The merits of such controversies are governed solely by the record in each case. Sharp practices and deception by counsel on either side will not be tolerated or encouraged. Hereafter we advise counsel to call this matter to the attention of the trial court immediately upon its discovery, and if the trial is in progress an investigation may be had that will save both the state and the accused further annoyance and expense.

After the presentation of the motion for a new trial the court heard evidence upon this assignment. Such procedure was proper. *Stewart et al. v. State,* 4 Okla. Cr. 564, 109 Pac. 243, 32 L. R. A. (N. S.) 505.

It clearly appears by the testimony of witnesses in support of the motion for a new trial, all of whom were members of the bar, that this juror, although asked on his *voir dire* examination if he had expressed any opinion as to the guilt or innocence of this defendant, and also whether he had any prejudice against the defendant, indicated in his answers that he had not expressed any opinion as to the guilt or innocence of the defendant, and also that he was not prejudiced against the defendant personally. It also appears, and is undisputed, that the counsel for defendant, who were actively engaged in the trial of the case, had no knowledge previous to the trial of the alleged fact that this juror had made the expressions attributed to him by the witnesses. One of these witnesses swears positively that this juror on the morn-

ing of the day that the case was called for trial, and on his way to the courthouse, made the statement:

"That damn fellow ought to be sent to the penitentiary anyhow. He got everything from that estate he could get his hands on."

This statement is corroborated in substance by another witness.

The juror Lewis was examined, and when asked with reference to whether or not he made such a statement testified, "That he did not remember of it at all; that he didn't know a thing about Spradlin, and if he said anything about the case he didn't remember it." In his cross-examination he testified that he did remember walking down the street with Mr. McDonald on the morning of the trial, and that he possibly did say something about having to serve on the jury, and regretting that he had to serve; that after the trial he did have a conversation with Mr. McDonald in which he was asked what he meant by qualifying as a juror; that if he said anything about the case he must have been joking about it; that he didn't know anything about the defendant, or that any case was pending against him.

It is also shown by the record that the witness W. H. Ritchie, an attorney at law, who represented the defendant in the settlement of his accounts in the county court, but who did not represent him in the trial of this case, had a conversation with the juror Lewis some time before the trial in which Lewis expressed the opinion, according to Ritchie, "That damn scoundrel ought to be in the penitentiary," referring to the defendant, "for robbing that child of his"; that the witness Ritchie, never communicated this information to counsel for the

defendant until after the trial of the case and until after
the witness McDonald was testifying to what he had
heard the juror Lewis state, but this testimony, the
witness Ritchie says, refreshed his recollection as to what
Lewis had previously stated to him. The juror Lewis
testified that he had never had such a conversation with
Ritchie. Section 5858, Rev. Laws 1910 (stating grounds
of challenge of jurors for express or implied bias), pro-
vides:

"For such a bias as, when the existence of the facts is
ascertained, in judgment of law disqualifies the juror,
and which is known in this chapter as implied bias..

"For the existence of a state of mind on the part of
the juror, in reference to the case, or to either party,
which satisfies the court, in the exercise of a sound dis-
cretion, that he cannot try the issue impartially, without
prejudice to the substantial rights of the party challeng-
ing, and which is known in this chapter as actual bias."

The grounds of challenge to a juror on account of
actual bias are the existence of a state of mind on the
part of the juror with reference to either party or to
the case which satisfies the court in the exercise of sound
discretion that he cannot try the issue impartially. One of
the essentials of a fair and impartial trial under our
statutes is that the person accused of crime shall be tried
by men who are not prejudiced against him or against his
cause. Where, upon the hearing of a motion for a new
trial, two reputable members of the bar testify positively
that a juror had expressed the opinion that the defendant
ought to be sent to the penitentiary, that he had stolen
everything he could from that estate, and it is apparent
that he referred to the matter in controversy in the trial,
and the juror, although admitting he had a conversation

with such witness at the time and place mentioned, only testifies that he has no recollection of making such statement, can it with reason be said under such circumstances that the defendant has had that fair and impartial trial guaranteed him by our Constitution and statutes? On the one side the testimony is positive and convincing; on the other doubtful and evasive; yet only 17 days intervened between the date of the alleged conversation and the hearing on the motion. The impartiality of the jury goes to the very foundation of the accused's liberty, and where evidence is introduced such as is disclosed by this record of a convincing character to show that there is a strong probability that the accused was not accorded that fair and impartial trial guaranteed to him by the Constitution and laws of this state, and the rebuttal evidence is of a very unsatisfactory character, the verdict should be set aside and a new trial granted. It requires the unanimous consent of the jury to convict, and a fair and impartial jury is not had by 11 impartial men and one man shown to be prejudiced within the definition of actual bias.

We deem it unnecessary to discuss the other alleged errors assigned as causes for reversal. For the foregoing reason the judgment is reversed, and a new trial granted.

DOYLE, P. J., concurs. ARMSTRONG, J,. not participating.