## LOTTIE ALLEN v. STATE.

No. A-7625.   Opinion Filed Nov. 19, 1930.
(293 Pac. 271.)

Joe S. Eaton, for plaintiff in error.

J. Berry King, Atty. Gen., and Edward Crossland, Asst. Atty. Gen., for the State.

CHAPPELL, J.   Plaintiff in error, hereinafter called defendant, was convicted in the district court of McIntosh county of the crime of robbery with firearms, and her pun-

ishment fixed by the court at imprisonment in the state penitentiary for 15 years at hard labor.

The state alleged that on the 7th day of March, 1929, Earl Smith, Clyde Hancock, Lottie Allen, and Earl Evans, with firearms, in the nighttime, robbed Marian Jimes of $390. A severance was granted, and a trial of the defendant resulted in her conviction by the jury.

The evidence of the state shows that on the evening of March 7, 1929, Earl Smith and Clyde Hancock knew Marian Jimes and that he kept a large amount of money about his home; that they went to the home of the defendant in Henryetta and there met Pete Blair, who had been keeping company with the defendant, and there they drank a quantity of whisky; defendant was dressed at that time in a plain house dress. Smith asked Blair, who had a Ford coupe, if he wanted to make some money. Smith had a pistol which had only one shell in it and wanted to get some more. Defendant said there were no shells on the place. Defendant and Smith went into another room, and when Smith returned into the room where Hancock had remained, he had stockings with him out of which Smith and Hancock made masks which were used and worn by them in the robbery of Marian Jimes that night. The defendant changed her clothes and put on yellow overalls, and when Smith and Hancock were ready to leave the house defendant said she was going with them because she needed the money. Smith, Hancock, and defendant all left defendant's home in Blair's automobile, he doing the driving. They went to the town of Hichita, where Smith and Hancock, who had put on masks, went into the home of Marian Jimes, while Blair and the defendant remained in the car. Smith went into Jimes' bedroom and robbed him of $390, and when Jimes resisted Smith shot him, from the effects of which wounds Jimes

died the next morning. Hancock covered Grandma Ford, the mother of Jimes, with a pistol and kept her from going to his rescue. Smith and Hancock then left the house, Smith carrying Jimes' pants in his hands. Jimes procured a gun and fired several shots at them, one of which took effect in the legs of defendant while she was standing on the runningboard of Blair's car. They then went to the home of defendant, where they had a doctor called for her, and before leaving she said to them "you have gotten me into this and don't go away and leave me this way without any money." Hancock got a $20 bill from Smith and gave it to her. Smith, Hancock, and Blair then proceeded to the home of Brady Blair, father of Pete Blair, where they divided the money; each receiving $55, and Blair taking $55 for defendant. Blair gave this money to defendant to pay doctor bills and buy groceries and clothing for her children.

On March 26th, Blair made a statement to the officers, detailing the circumstances of the robbery. This statement was reduced to writing and was read to the defendant and handed to her to read, and she then and there made a statement which was reduced to writing, stating that this statement of Blair's was true.

Defendant in her testimony admitted that she went with these parties to the Jimes home in Hichita, and was at the automobile when the robbery and shooting of Jimes took place, and that she was shot in the legs while in the street in front of the Jimes home; that she, Smith, Hancock, and Blair then came back to her home; and that she was given $20 by Hancock. She also testified that she did not know when the parties left her home that their purpose was to go to rob any one, but that she thought she was going out with them, and her purpose and understanding was to have intercourse with Smith; that the

first she knew of any other purpose on their part was when they stopped about 15 minutes before reaching Hichita and Smith put on a mask; and that she then said she did not want to be in a robbery.

Defendant earnestly contends that this evidence was insufficient to support the verdict of the jury.

The fact that the robbery was planned in defendant's home, that Smith procured the masks in defendant's room, and that defendant changed her clothes and went with them when the robbery was committed, the fact that defendant received her share of the proceeds of the robbery, and the fact that she signed and adopted the confession of Blair as her confession, makes the evidence sufficient to support the verdict of the jury.

Defendant next contends that one V. B. Johnson, a member of the jury who tried the defendant, was biased and prejudiced against the defendant and had made statements prior to the trial, in the presence of other parties, in which he said that if he was on the jury and they proved defendant was drunk, he would "pour it on her." That the juror did not disclose this bias and prejudice in his voir dire examination, and the defendant did not discover that said juror was biased and prejudiced until after the verdict of the jury had been returned.

In her motion for a new trial the defendant set up the bias and prejudice of this juror and supported the same by the affidavits of L. G. Shields and E. L. Boyd, who made affidavit in substance that the juror had said in their presence "that if he was on the jury and they proved that she, Lottie Allen, was drunk, he would pour it on her." The juror Johnson made affidavit denying that he had made any such statements. The state also introduced affidavits impeaching Shields and Boyd for

truth and veracity in the community where they resided. The state also introduced affidavits showing the reputation for truth and veracity of the juror Johnson was good.

The question of whether the defendant was injured in her substantial rights and was prevented from having a fair and impartial trial because of the bias and prejudice of the juror Johnson was an issue of fact to be tried by the trial court upon the hearing of the motion for a new trial. The court found such issue in favor of the state and overruled defendant's motion for a new trial.

The sustaining or overruling of motion for a new trial is a matter in the sound discretion of the trial court, and such ruling will not be disturbed unless it appears from the record that there was an abuse of such discretion. Adams v. State, 43 Okla. Cr. 179, 277 Pac 688.

For a full discussion of the necessary proof and the discretion of the trial court in the matter of bias and prejudice of jurors, see Smith v. State, 5 Okla. Cr. 283, 114 Pac. 350; Smith v. State, 19 Okla. Cr. 22, 197 Pac. 514.

An examination of the record discloses that the trial court properly denied defendant's motion for a new trial on the ground of bias and prejudice of the juror Johnson.

The defendant next contends that the court erred in admitting to the jury incompetent, irrelevant, and immaterial evidence.

It appears from the record that Pete Blair, who aided in the robbery, signed a confession detailing the facts as set forth in the evidence of the state. That thereupon such statement was read over to the defendant, and defendant, having herself read the statement, also signed a statement that the confession of Blair was true. Defend-

ant contends that this statement of Blair, made several days after the crime was committed, was inadmissible against her. This would have been true except for the fact that the defendant personally adopted this confession as her statement of the facts surrounding the robbery and her part in it, and thereby made the confession her own confession, and the same was, for that reason, admissible against her.

Defendant next urges that the punishment is excessive.

The statute under which the defendant was prosecuted fixes the maximum punishment at death. Under the facts and circumstances of this case, the jury could have assessed the death penalty. But, they having failed to fix the punishment, the court no doubt in pronouncing judgment and sentence on the verdict took into consideration the fact that defendant was a woman, that she was wounded during the robbery, and that she did not fire the fatal shot, and, by reason of these circumstances, fixed defendant's punishment at 15 years in the penitentiary.

The record presents no reason for reduction in the punishment.

For the reasons stated, the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.