## JACOB VANDERSLICE v. STATE.

No. A-8919.   March 6, 1936.
Rehearing Denied April 17, 1936.
(57 Pac. [2d] 267.)

one other.

Holmes H. Colbert and Embry, Johnson, Crowe & Tolbert, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter for convenience referred to as the defendant, was convicted of the crime of forgery in the first degree, in Murray county, and sentenced to be imprisoned in the state penitentiary for a term of seven years.

The information upon which the defendant was charged, omitting the caption and signature, is as follows:

"Now comes Lynn W. Norman, the duly qualified and acting county attorney in and for Murray county, state of Oklahoma, and gives the district court of Murray county and the state of Oklahoma, to know and be informed that Jacob Vanderslice did, in Murray county and in the state of Oklahoma, in the year of our Lord One Thousand Nine Hundred and Thirty-two, and anterior to the presentment hereof, commit the crime of forgery in the first degree in the manner and form as follows, towit:

"That the said Jacob Vanderslice, did on said day and date and in said county and state, wilfully, unlawfully, and feloniously and fraudulently and with the premeditated design to obtain money by false and fraudulent pretenses, did forge the name of O. W. Montgomery, county treasurer of Murray county, Okla., to a certain warrant No. 5 of school district No. 6, in the amount of $100 in Murray county, Okla., the same being the Oak Grove school of said county and state, and he the said Jacob Vanderslice did wilfully, unlawfully and feloniously and fraudulently forge the bogus signature as aforesaid for the purpose of showing that said warrant had been registered in the office of the county treasurer of Murray

county, Okla., that the said warrant was made payable to Howard Wagoner, and was purported to have been issued by said district for services rendered by the said Howard Wagoner as teacher of said school; that a copy of said warrant is hereto attached, and made a part hereof, that the said Jacob Vanderslice did wilfully, unlawfully and feloniously and with the premeditated design to defraud, take said bogus warrant and under representations that the same was a valid warrant against said school district pass the same to Mrs. B. H. Smith, of Hickory, Okla.; that said warrant is a warrant issued against the public funds of said school district, the same being a subdivision of the state of Oklahoma; that the names of the officers forged are the names of public officials of Murray county, Oklahoma, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state."

Mrs. B. H. Smith, called as a witness for the state, in substance testified as follows:

"I have known the defendant six or seven years; knew him when he was superintendent of the schools of Murray county; in September, 1932, I was teaching school in Hickory township; I have examined state exhibit A. The defendant gave the warrant to me in September or October, 1932—I would not be positive which.

"It was some time after the date of the warrant; when I first saw him I believe it was here in the courthouse; the warrant was given me on a debt of $100, and was to pay the debt of $100 he owed me; I came to see the defendant to collect the money, and he said he had the warrant if I was willing to take it, and I told him I was; I remember he told me the warrant was not payable or was not called, or something to that effect, but if it was not called by the first of the year he would take it up; the warrant was fully filled out by the names of the members of the school board being attached. I later got the cash from the county treasurer; it seems to me it was some time in March, but I would not be positive about that. The county treasurer paid me out of county funds,

I suppose; I cannot remember clearly whether the warrant was turned down by the county treasurer's office, but I got the money; I do not remember who cashed the warrant; I saw the warrant in the county treasurer's office and I paid the county back the money that was paid to me for it; I had gotten the money from the county on the warrant and I returned it."

On cross-examination Mrs. Smith testified the defendant owed her money when she got the warrant; that he had been owing her since April, 1932:

"The warrant was delivered to me in the fall of 1932; after the warrant was taken up the defendant paid me the $100 he owed me; at the time he delivered the warrant the defendant did not tell me the warrant was not good, nor did he tell me it was not legal. If he said anything about it being illegal, I do not remember it."

Howard Wagoner, testifying on behalf of the state, stated:

"I was teaching school in this county in the fall of 1932, at Oak Grove school; the members of the board were T. C. Roberson, B. F. Frazier, and J. H. Brown; I did not get the warrant marked state exhibit A, purported to have been issued September 3, 1932, for $100; it was never offered to me; I got my salary warrant that was due in September, 1932; I do not remember what date it was.

"I wrote my name in the stub of the warrant book for the warrant that was issued to me; the stub shows it was for my September salary; it was general fund warrant No. 5; amount $100; independent school district No. 6; dated September 2, 1932; issued to Howard Wagoner on account No. 5; department, teachers' fund; appropriation for $1,800; amount approved for this purpose $450; warrant issued No. 5, $100. This warrant $100, pending claims and contracts $300; total charged against the appropriation $300, unencumbered balance $150; received this warrant this 2d day of September, 1932, signed Howard Wagoner. This warrant is No. 5; I did not draw

the other warrant for teaching prior to this time; Frazier and Roberson were the members of the school board that signed my warrant; I had nothing to do with the warrant marked state's exhibit A. There was no money due me from the school district on September 3, 1932. The defendant, Mr. Vanderslice, was county superintendent at that time, and on the date this warrant purports to have been issued and signed; I did not sign my name on the back of the warrant designated as state exhibit A, nor do I know who wrote it."

T. C. Roberson, testifying in behalf of the state, stated:

"I live in Oak Grove district; I was an officer of the school board in 1932; the two other members of the board were B. F. Frazier and J. H. Brown; I was clerk of the school board; I kept the warrant book for the school district; on September 2, 1932, there was a warrant issued to Howard Wagoner for salary, in the sum of $100; the number of the warrant was No. 5; there had been one other warrant issued for Howard Wagoner out of this book before that time; there had been other warrants issued to other parties; we had two teachers in the district at that time; I had nothing to do with the issuing of the warrant shown as state exhibit A. The first time I saw the warrant Mr. Montgomery and Mr. Johnson, the sheriff here, came out and brought it; my name is on the warrant but not my signature; I did not sign it; I never saw the warrant until Mr. Montgomery and Mr. Johnson came to my place with it."

Mr. Brown signs his name J. H. Brown, but he did not sign the school warrants; they were signed by Mr. Frazier, as director:

"I wrote one, dated September 2, 1932, payable to Howard Wagoner; the warrant, state's exhibit A, is the form of the warrants that were used in our school district; the warrant is just the same size as the stub."

198

Mrs. Smith was recalled for further examination, and stated:

"At the time the state warrant was turned over to me it had the name of Howard Wagoner on the back of it; it did not have the name of Jacob Vanderslice on it at the time it was delivered to me; I saw the defendant Mr. Vanderslice's name put on the warrant by the defendant himself; Mr. Montgomery looked at the warrant and stated he could not handle it unless it had Mr. Vanderslice's signature on it; I took it in to Mr. Vanderslice and he signed it; I then took it back to Mr. Montgomery's office, and he paid me the money." On further cross-examination, the witness stated: "We had the defendant write his name on there because Mr. Montgomery said the warrant was no good without the name of the defendant, Mr. Vanderslice; Mr. Montgomery said he could not handle the warrant without the name of Mr. Vanderslice on the warrant."

B. F. Frazier, testifying on behalf of the state, stated:

"I am the director of Oak Grove school district, and have been for two years; I was director in September, 1932; Mr. Roberson and myself signed the warrants for the school district; on September 2, 1932, we issued a warrant, and Mr. Roberson and I signed it; I have seen state exhibit A, and I do not know anything about the issuing of the warrant, nor did I have anything to do with the warrant."

On cross-examination he stated Mr. Brown was not supposed to sign any of the warrants; he was a member of the school board:

"I was the director; I do not know whether Mr. Brown signed the state warrant designated as state exhibit A, or not."

C. M. Mays, testifying on behalf of the state, stated:

"I know the defendant, Mr. Vanderslice. I have examined state exhibit, which you have handed me, and

will state that the Mays Lumber Company received it, and gave Mr. Vanderslice credit for it on the books; he had been buying some lumber from the company and gave that warrant to us for credit to apply on the account; at the time the warrant was turned over to me, to the best of my knowledge, the indorsements were on the warrant that are on the warrant at this time." On cross-examination he stated he did not receive the warrant personally from the defendant, but it was placed in his hands by Mr. Leonard; the warrant was filled out in the regular way.

O. W. Montgomery testified he was county treasurer, and had been since July, 1931:

"I had a warrant registered to Howard Wagoner, dated 9-2-32; the warrant is No. 5; I have warrant No. 1, registered to Howard Wagoner, from the school district which was issued the 6th day of August, 1932; amount of the warrant, $100. I have seen state exhibit A; Mrs. B. H. Smith presented this warrant to me; I do not have the exact date as to when it was paid; the warrant was paid on May 15, 1933; we never did register this warrant; we registered No. 5, the one I have testified to a minute ago. State exhibit A was presented to me by Mrs. Smith; when she presented it, it did not have the indorsement of Jacob Vanderslice, the defendant; I did not see the indorsement put on it, but later it was brought back to me; we paid this warrant and discovered there were two No. 5 warrants that appeared to have been issued. The defendant sent word to me to come to his office and I went to the office and he stated, 'I am worried about these warrants; I put every one of the names on that warrant myself; I will give you a check for this warrant,' and I told him, no, I would not take his check for it, I was expecting Mrs. Smith to take it up; 'it is for you and Mrs. Smith to make it all right'; and he told Mrs. Smith about the same thing; that there had been some little irregularity about the warrant, and he told her he would give her a check for it. Mrs. Smith asked me to go call the bank and see if Mr. Vanderslice had the money,

and I said if Mr. Vanderslice wanted me to, and when I called them they said he had the money; I came back and told Mrs. Smith, and he gave Mrs. Smith his check. State exhibit C, warrant No. 7, on school district No. 27, that has been handed to me was not registered in my office; my records do not show any thing with reference to this warrant; I did not put my name on state exhibit A, nor did I put my name on state exhibit C."

Witness further stated that state's exhibit D, which is warrant No. 33, school district No. 23, payable to Jacob Vanderslice, was never registered in his office. "I did not write my name on the warrant."

Witness further stated:

"State's exhibit E, drawn on school district No. 17, warrant No. 18, dated February 18, 1932, was not registered in my office; I did not write my name to that warrant. If the warrant was ever presented to my office for payment I do not remember it. State exhibit F, drawn on school district No. 17, dated December 23, 1931, for the amount of $92, which was warrant No. 10, was registered in my office. This warrant was paid on August 27, 1932, to Park National Bank."

On cross-examination witness testified he had examined his books and found no record of state exhibit A.

Nadine Talley testified:

"I am assistant county treasurer and have been since July, 1931; I did not sign my name to the warrant designated as state exhibit No. A, nor did I sign O. W. Montgomery's name to the warrant; when the warrant came in for payment I noticed the signature, which did not look like mine, and I had my conversation with Mr. Montgomery, the treasurer; I did not have a conversation with Mr. Vanderslice over this warrant; I have seen Mr. Vanderslice sit and write different names for quite a while; I have seen him write my name often; never talked with him excepting about his being a good penman."

C. F. Howe, testifying for the state, stated:

"I am the clerk of the school board in district 17, and was clerk in December, January, and February, 1931 and 1932. The signature on state exhibit F is my signature; I signed the warrant to the Metropolitan School Supply Company."

J. H. Hill in substance stated:

"I was the director of the school board in district 17 in 1931 and 1932; I signed my name to state exhibit F; it was issued by the board."

O. W. Montgomery testified regarding state exhibit F:

"The warrant had been registered in my office; the indorsement O. W. Montgomery, by J. E. Bailey, was properly endorsed, as Mr. Bailey was one of my assistants in the treasurer's office at the time."

Victor Leonard, testifying for the state, testified that state exhibit D was turned over to him by the defendant and was applied on the debt the defendant owed the Mays Lumber Company.

The defendant did not take the stand and permitted the question of the forgery of the warrant to be submitted to the jury undenied by him. He called Oscar Smith, and six other witnesses, who testified as to his previous good character, as being an honest, upright, law-abiding citizen.

The foregoing is in substance the testimony of the state and the defendant.

The defendant has assigned several errors alleged to have been committed by the trial court. The first proposition discussed by the defendant in his second assignment is that the court erred in overruling his demurrer to the information. It is forcibly urged by the defendant that the information upon which he was placed on trial

charged two separate and distinct offenses, occurring at different times, and carrying widely different penalties, and that the court committed reversible error in proceeding to trial upon the information; and he urges that the information charged the defendant with the offense of having forged the name of O. W. Montgomery to the school warrant, a public security, and the additional offense of having the intent to defraud, uttered and passed said warrant to Mrs. B. H. Smith, and that the elements of both offenses are set forth in the information.

An examination of the defendant's brief discloses that defendant urges evidence was introduced in the trial to prove both offenses, and the court instructed the jury on the evidence necessary to convict on both offenses. With the contention of the defendant that the court instructed the jury on the evidence necessary to convict on both offenses this court cannot agree, as the instructions of the court clearly show that he stressed the question of the forgery and in writing the instructions he practically used the language of the information, but did not instruct the jury on the question of uttering or passing the forged instrument.

Section 2120, O. S. 1931, is as follows:

"Every person who, with intent to defraud, forges, counterfeits, or falsely alters:

"First. Any certificate or public security, issued or purporting to have been issued under the authority of this state, by virtue of any law thereof, by which certificate or other public security, the payment of any money absolutely or upon any contingency is promised, or the receipt of any money or property acknowledged; or

"Second. Any certificate of any share, right or interest in any public stock created by virtue of any law of this state, issued or purporting to have been issued by

any public officer, or any other evidence of any debt or liability, of the people of this state, either absolute or contingent, issued or purporting to have been issued by any public officer; or,

"Third. Any indorsement or other instrument transferring or purporting to transfer the right or interest of any holder of any such certificate, public security, certificate of stock, evidence of debt or liability, or of any person entitled to such right or interest—

"Is guilty of forgery in the first degree."

Section 2139, O. S. 1931, cited by the defendant in his brief, is the correct statute under which the defendant would be sentenced, if he was tried and convicted on a charge of uttering or passing a forged note, instrument, warrant, etc.

The defendant in his argument relies chiefly on the case of Wells v. Territory, 1 Okla. Cr. 469, 98 Pac. 483, 484, in which case the court said:

"We believe the indictment is bad for duplicity, in charging two distinct offenses in one count; that is, the uttering of the check, knowing it to be forged, and the forging of the indorsement thereon, and then uttering the same. The offenses are distinct, arising upon different acts, and each constitutes the offense of forgery in the second degree."

The Attorney General in his brief argues that the latter part of the information is a description of the manner in which the defendant committed said crime of forgery, and that portion of the information setting forth that the defendant passed the forged instrument to Mrs. B. H. Smith cannot be intended as a charge or attempted charge of the crime of uttering a forged instrument, and states that two essential elements of such crime were lacking: First, knowledge of the false or forged charac-

ter of the instrument and consideration; and, second, that the information is wholly insufficient to charge the defendant with the crime of uttering such forged instrument, and that the defendant could not have been convicted for uttering the instrument.

In Wells v. Territory, supra, the authority upon which the defendant relies to support his contention that there are two separate and distinct offenses described in the information, the court uses this language:

"It is a general rule that when a statute makes it an offense to do some one or another act, naming them disjunctively, either of which would constitute one and the same offense, the acts may be charged conjunctively in one count as constituting a single offense, and it has been held that: 'Where the making and uttering of a fictitious instrument is one continuous transaction, they may be properly charged in one count as a single offense.'" People v. Dole, 122 Cal. 486, 55 Pac. 581, 68 Am. St. Rep. 50; Selby v. State, 161 Ind. 667, 69 N. E. 463; State v. Greenwood, 76 Minn. 207, 78 N. W. 1044, 1117.

The defendant, in support of his contention that the information in this case charges two separate and distinct offenses in one count, in addition to Wells v. Territory, supra, relies upon the following decisions: 16 C. J. 956 § 112; State v. Wood, 13 Minn. 121 (Gil. 112); Ball v. State, 48 Ark. 94, 2 S. W. 462; State v. McCormack, 56 Iowa, 585, 9 N. W. 916, and authorities therein cited.

The question to be determined by this court is the question: Does the information in this case charge the defendant with the commission of two separate and distinct crimes in one count in the information? If it does, the information is bad, and the demurrer of the defendant should have been sustained.

It appears from the record that at the close of the state's testimony the defendant demurred to the evidence

on the ground that the evidence offered on behalf of the state was wholly insufficient to prove the charge of forgery in the first degree, or any other offense against the state of Oklahoma. It is further shown at the close of the testimony, and before the court instructed the jury, the defendant moved the court to instruct the jury to return a verdict of not guilty for the reason that the testimony is wholly insufficient to sustain the allegations in the information. No motion was made by the defendant at the close of all the testimony to require the state to elect the charge it would go to the jury on and ask for a conviction. The court in its instructions in substance recited the allegations in the information and specifically confined the instructions to the crime of forgery in the first degree.

Following the instructions of the court, the jury, by its verdict, found the defendant guilty of forgery in the first degree, as charged in the information. It is not disclosed by the record that there was ever an attempt to charge the offense of uttering a forged instrument, nor does it appear in the record that any evidence was introduced for the purpose of trying to convict the defendant of uttering a forged instrument. The allegations in the information with reference to the passing of the warrant with the name of the county treasurer on it relate to the forging of the instrument and were simply an explanation in support of the essential allegations of an intent to defraud in the commission of forgery. In the case at bar, the defendant was charged with forging the indorsement of the county treasurer on the warrant, and allegations of his passing the same were simply a continuation of the transaction constituting forgery. In Wells v. Territory, supra, the court in part stated:

"Where the making and uttering of a fictitious instrument is one continuous transaction, they may be properly charged in one count as a single offense."

In People v. Ellenwood, 119 Cal. 166, 51 Pac. 553, the information contained two counts. The court held that they in fact constituted one count. In the third paragraph of the syllabus, the court said:

"Where an information charging one with making and passing a fictitious check, with intent to defraud, alleges—First, that the accused made said check upon a certain bank, payable to the order of one R., and signed F., with intent to defraud D.; and, second, that the accused passed said check to said D. with like intent; and it is shown that the making and passing of the check refer to the same instrument and charge the same intent —the making and the passing constitute but one offense, and are properly charged in the information in one count." State v. Perry, 101 W. Va. 123, 132 S. E. 368, and authorities therein cited.

The statutes in the various states differ, and the decisions must be construed and applied in the light of such statute. Neither the brief of the defendant nor the state cites any case where the court has passed upon an indictment or information drawn exactly in the language used in the information upon which the defendant was tried and convicted.

The court has carefully considered the allegations of the information and authorities cited by both the defendant and the state, and has reached the conclusion that the allegations in the information relate to the same instrument and the same person and constitute part of the same continuous act, and that the court did not err in overruling the demurrer of the defendant to the information.

In arguing the second proposition, the defendant contends the court erred in admitting exhibits C, D, E, and F, over his objection, for the reason that they related to the commission of another crime, and were in no way whatever connected with the charge upon which the defendant was being tried. An examination of the record discloses that these exhibits were introduced to show that just prior to and about the time the charge of forgery upon which the defendant was being tried, had been forged by the defendant. The defendant insists that there is no proof showing the exhibits had been forged by the defendant, and that they were inadmissible against the defendant. With this contention of the defendant that there is no proof showing the exhibits had been forged we cannot agree. The testimony is sufficient to show that the exhibits C, D, E, and F, were in the handwriting of the defendant. The question to be decided is, were the exhibits admissible to show the motive or intent of the defendant, that he had been systematically forging similar instruments to the one upon which he was being tried?

⸱ The defendant, in support of his contention that the exhibits were inadmissible, cites Quinn v. State, 54 Okla. Cr. 179, 16 Pac. (2d) 591. An examination of that case shows that this court, in the third paragraph of the syllabus, laid down the following rule:

"Where defendant is on trial for a single offense, evidence of unrelated offenses is not admissible, unless relevant to the issue, and both are so closely linked and connected as to form a part of the res gestae, or tending to establish a systematic scheme or plan embracing the commission of two or more offenses so related to each other that proof of one tends to establish the other, or tending to show motive or intent."

The exhibits complained of were introduced by the state for the purpose of showing a systematic scheme or

plan by the defendant, and to show a motive or intent to forge the instrument upon which he was being tried. Many authorities have been cited by the defendant to sustain his contention that the exhibits complained of were not admissible.

In Reniff v. State, 53 Okla. Cr. 448, 13 Pac. (2d) 592, the court said in part:

"It is also argued that the court erred in admitting testimony of other offenses. There was testimony that defendant at about the same time under similar circumstances passed several other forged checks in the same manner as the check, and for approximately the same amount in this case. This was admitted under the well-settled rule that proof of other offenses of similar character and near in point of time, is relevant and admissible to show a system of criminal action and the knowledge and intent of the accused and to show the act charged was not an inadvertence. The testimony was clearly competent. State v. Rule, 11 Okla. Cr. 237, 144 Pac. 807; Harrell v. State, 43 Okla. Cr. 278, 278 Pac. 404; Carmichael v. State, 44 Okla. Cr. 160, 279 Pac. 515."

The defendant, in support of his contention that the exhibits complained of were inadmissible, refers to Appleby v. State, 11 Okla. Cr. 284, 146 Pac. 228, in which the court said:

"The general rule is that, when a defendant is put upon trial for an offense, he is to be convicted, if at all, by evidence, which shows that he is guilty of that offense, and proof of his guilt of other offenses is incompetent and inadmissible, except for the purpose of showing intent, motive, or guilty knowledge." Smith v. State, 14 Okla. Cr. 348, 171 Pac. 431.

Exhibits C, D, E, and F are admissible, as they tend to show guilty knowledge or intent on the part of the defendant in the commission of the offense charged, and tend to establish a scheme or plan embracing the com-

mission of similar offenses so closely related to each other that proof of one tends to connect the defendant with the commission of the other.

It is next urged by the defendant that the venue of the action was not established in Murray county. We think the testimony of Mrs. Smith and other witnesses who testified in the case, as well as all the circumstances surrounding the handling of the warrant to show the offense was committed in Murray county, and that the contention of the defendant that venue was not shown is without merit.

The fourth and last proposition discussed by the defendant is set forth in his motion and amended motion for a new trial, in which he alleged that a certain juror who sat in the trial of his case was biased and prejudiced against him prior to the trial and prevented him from having a fair and impartial trial. The motion and amended motion for a new trial was considered by the court and overruled, and defendant excepted.

The examination of the jurors on their voir dire is not included in the record, and this court cannot say what answers the jurors gave when examined as to their qualifications. So far as the record shows, no objection was made to the jurors or any one of them at the time the jurors were called and examined as to their qualifications. The record fails to show that the jurors were questioned as to their bias or prejudice against the defendant.

In Horton v. State, 10 Okla. Cr. 294, 136 Pac. 177, this court said:

"Where a defendant accepts a juror without availing himself of the right to examine such juror on voir dire, or without availing himself of the right to challenge him for cause, he will not * * * be allowed to make the objec-

tion that the juror has formed and expressed an opinion adverse to him, as a ground for a new trial."

In Dixon v. State, 56 Okla. Cr. 454, 42 Pac. (2d) 286, this court reaffirmed the doctrine laid down in Horton v. State, supra. The court carefully considered the motion and amended motion of the defendant for a new trial and overruled the same.

In Allen v. State, 49 Okla. Cr. 195, 293 Pac. 271, in the first paragraph of the syllabus, this court stated:

"A motion for a new trial is addressed to the sound discretion of the trial court; and, unless it affirmatively appears from the record that the trial court abused its discretion, a new trial will not be granted." Adams v. State, 43 Okla. Cr. 179, 277 Pac. 688.

In Smith v. State, 19 Okla. Cr. 14, 197 Pac. 514, in the first paragraph of the syllabus, this court said:

"Where a new trial is asked for upon the grounds that a juror who served upon the jury was prejudiced against the defendant, which prejudice was unknown to the defendant prior to rendition of the verdict, to entitle the defendant to a new trial, it must not only be shown that the said juror was prejudiced, but it must also appear that the defendant suffered an injustice by reason of the said juror having served upon the said jury."

It has been uniformly held by this court that on matters of discretion the decision of the trial court will not be set aside unless there appears to have been a manifest abuse of the discretion thereof. Spradlin v. State, 13 Okla. Cr. 376, 164 Pac. 990; Bethel v. State, 8 Okla. Cr. 61, 126 Pac. 698.

From the record before us, we cannot say, therefore, that there was a manifest abuse of discretion in overruling the motion and amended motion for a new trial such as should result in a reversal of this judgment of conviction.

The record has been carefully read and studied by this court, and all of the assignment of errors that it is considered necessary to discuss have been discussed.

There are no errors sufficient to warrant a reversal. The defendant was accorded a fair and impartial trial. The defendant offered no evidence to show that the forging of the name of O. W. Montgomery to the warrant was not done for the purpose of passing the warrant as a good and valid warrant. The warrant on its face showed it to have been regularly issued. No explanation is given by the defendant as to why he signed the name of the officers to this warrant. The school warrant book shows that a warrant for the salary of the teacher had been issued one day prior to the day this forged warrant was dated. The court correctly advised the jury as to the law applicable to the facts.

There being no errors in the record sufficient to warrant a reversal, the judgment is affirmed.

EDWARDS, P. J., and DOYLE, J., concur.