Guy PAYNE, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12032.

Criminal Court of Appeals of Oklahoma.

Oct. 13, 1954.

Rehearing Denied Dec. 8, 1954.

Harold R. Shoemake, Garrett & Garrett, Muskogee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

The plaintiff in error Guy Payne, defendant below, was charged by information in the district court of Muskogee county, Oklahoma, with the crime of first degree manslaughter, allegedly committed in said county and state on April 11, 1953. More specifically it was alleged that while operating a motor vehicle, to wit, "a 1951 Mercury Fordor Sedan on and along Gibson Street in the City of Muskogee, Oklahoma, while under the influence of intox-

icating liquor, and did then and there drive said automobile at a speed greater than was reasonable and. proper, having due regard for the traffic, surface and width of the highway and at a speed greater than would permit him to bring said automobile to a stop upon said Street within the assured clear distance ahead; and while so unlawfully driving said automobile as aforesaid, he, the said Guy Payne, had riding with him in said automobile certain persons, to. wit: Red Rowe, Milton Pruitt and Allene Rowe Tucker, and the said Guy Payne did then and there wilfully, wrongfully, negligently and feloniously drive and propel said automobile into and over the curbing along said Gibson Street in an unlawful, negligent, culpable and reckless manner, thereby causing said automobile to be wrecked and damaged and said wreck and a concussion of said automobile caused the person of said Allene Rowe Tucker to be thrown from the automobile and thereby did mangle, bruise and break the body of said Allene Rowe Tucker, thereby inflicting wounds upon her, the said Allene Rowe Tucker, of which wound and injuries she, the said Allene Rowe Tucker, then and there died; * *." The foregoing information was attacked by demurrer for duplicity, wherein it was alleged said information was duplicitous in that it alleged first degree manslaughter, Title 21, § 711, O.S.1951, predicated upon two separate and distinct misdemeanors, to wit, (1) driving while under the influence of intoxicating liquor, and (2) reckless. driving; and further that it charged manslaughter in the second degree by reason of culpable negligence. The demurrer was overruled. The overruling of the demurrer is one of the assignments of error herein.

 Thereafter there were delays of the trial and requests for continuances.. Among the requests for a continuance is an oral motion on the ground of an unidentified witness who was supposed to have been in the Flamingo Club when the defendant was there and who followed in her car, the route of the defendant, and who, if available, would testify that the defendant was not intoxicated and driving in a reckless manner and at an excessive rate of speed. The trial court did not abuse its discretion in overruling the said motion for the reason it could only conclude the existence of a witness such as claimed by the defendant was speculative, her name being unknown and her whereabouts as misty. The motion for new trial does not remove the cloak of speculation as to her identity, her whereabouts or her availability, There was . nothing from which the trial court could determine any probability of her presence being secured if the cause were to be continued to another term. Hence the motion did not comply with the rules established by this court pertaining to continuances on the ground of the absence of a material witness. Jackson v. State, 72 Okl.Cr. 226, 114 P.2d 953; Lane v. State, 65 Okl.Cr. 192, 84 P.2d 807; Stacey v. State, 79 Okl.Cr. 417, 155 P.2d 736. An application of this kind being addressed to the sound discretion of the trial court, it is apparent there was no abuse of discretion in overruling this motion for continuance. Stacey v. State, supra; Gillaspy v. State, Okl.Cr., 255 P.2d 302.

 Thereafter further attempts at delay were had by way of attempts to disqualify the trial judge on the ground of prejudice. No adequate grounds for disqualification are shown. We are of the opinion that the record discloses a fair and impartial trial on the merits of the case. This fact is an important factor in determining the contention that the trial judge should have disqualified. The first date set for the trial of this case was delayed because one of defendant's counsel was a member of the legislature and the trial was postponed until after the adjournment of the legislature.

 Probably the most serious point urged by the defendant is that the trial court erred in not sustaining his demurrer to the information on the ground of duplicity, and in overruling his motion for new trial, that the information alleged first degree manslaughter as well as second degree manslaughter. He urges, Title 21, § 711, O.S.1951, provides:

"Homicide is manslaughter in the first degree in the following cases:

"1. When perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor."

Title 21, § 716, O.S.1951, provides:

"Every killing of one human being by the act, procurement or culpable negligence of another, which, under the provisions of this chapter, is not murder, nor manslaughter in the first degree, nor excusable nor justifiable homicide, is manslaughter in the second degree."

The defendant argues that the first part of the information charged first degree manslaughter by reason of the commission of several misdemeanors resulting in the death of Allene Rowe Tucker, and the latter part charges second degree manslaughter in alleging "the said Guy Payne did then and there wilfully, wrongfully, negligently and feloniously drive and propel said automobile into and over the curbing along said Gibson Street in an unlawful, negligent, culpable and reckless manner, thereby causing said automobile to be wrecked" and "thereby inflicting wounds upon * * * the said Allene Rowe Tucker, of which wounds and injuries she, * * * died; * * *." He contends the foregoing violates Title 22, § 404, O.S.1951, which provides:

"The indictment or information must charge but one offense, but where the same acts may constitute different offenses, or the proof may be uncertain as to which of two or more offenses the accused may be guilty of, the different offenses may be set forth in separate counts in the same indictment or information and the accused may be convicted of either offense, * * *."

We are of the opinion that in accordance with the provisions of Title 22, § 404, O.S. 1951, that under technically correct pleading the charge of first degree manslaughter and second degree manslaughter be set forth in separate counts and that the counts in the information should have shown upon their face that they all referred to one and the same transaction. Bonitzer v. State, 4 Okl.Cr. 354, 111 P. 980. But, we are further of the opinion that the failure so to do herein is not a fatal defect for two reasons, (1) because there is only one transaction herein involved and the evil to which Title 22, § 404, O.S.1951, is directed, is that not more than "one transaction should be investigated at a time"; Bonitzer v. State, supra, and "an indictment or information which charges two or more separate and distinct offenses not based upon the same transaction is bad for duplicity, and should be quashed whether said charges are contained in one or more counts." In Bonitzer v. State, supra, it was further said:

"If the state could bring several criminal accusations against the defendant in one information or indictment, based upon more than one transaction, what limit would there be as to the number of transactions which might be incorporated in one indictment or information, or how would it be possible for the defendant to know as to the particular transaction for which he will be placed upon trial, and how could he prepare his defense? This makes it clear that the requirement of the statute that but one transaction should be investigated at a time is based upon reason and justice, and that it confers a valuable right upon the defendant. This is not only our statute law, but it is the very substance of our Constitution itself."

Berg v. State, 29 Okl.Cr. 112, 233 P. 497. To the same effect see Hill v. State, Okl. Cr., 266 P.2d 979, 981, wherein other cases set forth the test for the determination of whether an information may be duplicitous, and Judge Jones said:

"We think the construction of this information is controlled by what was said in the case of Bowman v. State, 82 Okl.Cr. 199, 167 P.2d 663, 666, wherein this court stated:

"'Counsel contend that this information is bad for duplicity, in that it charges two separate and distinct offenses in one count.

"'The information does not charge two offenses. It only charges the commission of one offense, to-wit, man-

slaughter in the first degree, but it does allege different acts which were committed by the defendant which would constitute the offense of manslaughter in the first degree.

" 'In Moore v. State, 58 Okl.Cr. 122, 50 P.2d 746, 747, it is stated: "Where a statute defines an offense and enumerates and describes the different acts or things which constitute the offense, all the said acts may be charged in a single count conjunctively, since though each by itself may constitute the offense, all together do no more, and constitute but one and the same offense." * * *

" 'The test seems to be whether information charges more than one crime or whether it defines a single crime which may be committed in a number of ways. * * * ' "

To the same effect see also the recent opinion of State v. Hollis, Okl.Cr., 273 P.2d 459; also Miles v. State, Okl.Cr., 268 P.2d 290. The foregoing cases are in point with the situation in the case at bar. Clearly the transaction herein involved was based only upon one transaction, hence we do not believe the information herein is duplicitous. Witzel v. State, 89 Okl.Cr. 142, 205 P.2d 1173; Wheatcraft v. State, 32 Okl.Cr. 379, 240 P. 753. Still, we are of the opinion that the directive in Title 22, § 404, O.S.1951, as to separate counts should be followed in every case involving only one transaction where the matter charged may constitute different violations of law under separate sections of the statute. However, the failure to plead second degree manslaughter in a separate count, in the case at bar, is harmless even though technically erroneous, for the reason that second degree manslaughter was one of the included offenses within the charge of first degree manslaughter, even if it had not been expressly alleged, and which, under the facts herewith presented the trial court should under requirements of law, and did herein in fact, cover with proper instructions. In any event the second degree manslaughter charge in the information being an included offense constituted little more than surplusage, which might have

been reached by a motion to strike. State v. Hollis, supra. It is apparent that the form of pleading herein resulted in no prejudice to the defendant. Therefore we cannot see how this technicality in pleading as herein presented would constitute more than harmless error. Title 22, § 1068, O.S.1951.

Next the defendant complains that the county attorney deliberately injected the name of Slim Payne into the case at bar by telling the jury on voir dire examination that Slim was a cousin of Guy Payne. It appears, Slim Payne was a codefendant with another person in a famous federal court case involving a conspiracy to violate the federal liquor laws which was likewise prosecuted in Muskogee county. The defendant contends this was improper, and that it was injected solely for the purpose of prejudice. In this connection, the jury to be competent must stand indifferent having no bias or prejudice for or against either party. Gregg v. State, 69 Okl.Cr. 103, 101 P.2d 289; Boutcher v. State, 4 Okl.Cr. 576, 111 P. 1006. The right of challenge on the ground of the competency of a juror in a criminal case belongs to the state as well as to the accused. But questions to jurors on voir dire examination must be propounded in good faith, and counsel should not be allowed to make any improper statements calculated to prejudice or intimidate the jury. 50 C.J.S., Juries, § 276d, Notes 46, 47, p. 1059. The form of questions put to jurors on voir dire examination is a matter within the discretion of the trial court, and will not be interfered with where no prejudice is shown. 50 C.J.S., Juries, § 276d, Note 34, p. 1058. A juror may be fully examined and asked any questions which are pertinent to show existence of bias or prejudice. Vardeman v. State, 54 Okl.Cr. 329, 20 P.2d 194. To test bias and prejudice of a juror, it is proper to inquire into his relationship with the parties to the action. 50 C.J.S., Juries, § 275b, p. 1044. In Grim v. State, 32 Okl.Cr. 297, 240 P. 1093, 1095, it was said:

"The purpose of the examination of a juror on his voir dire is to ascertain if there are grounds for challenge

for either actual or implied bias; also, to enable the defendant to exercise intelligently his peremptory challenges. This court has uniformly held that a liberal latitude should be given the defendant in the examination of the jurors on their voir dire. Temple v. State, 15 Okl.Cr. 176, 175 P. 733."

In Vardeman v. State, supra [54 Okl.Cr. 329, 20 P.2d 195], it was said:

"The manner and extent of examination of jurors, touching their qualifications, cannot be prescribed by any definite, unyielding rule, but rests to a large extent in the sound discretion of the trial judge. In the examination, such latitude should be given the parties as will enable them to procure a jury free from outside influence, bias, or personal interest."

In no other way can the rights secured under Title 22, § 659, O.S.1951, in relation to challenges of jurors for bias be vitalized. The only basis for impropriety in the matter of injecting Slim Payne into the case at bar lies in the fact that the matter was injected by the prosecutor as a statement of one testifying, and that it was not put in the form of a question. (We know the Assistant County Attorney prosecuting this case was formerly Assistant United States Attorney.) Hence, we can readily perceive that some juror because of his acquaintance with the Slim Payne case, and the prosecutor's connection therewith, or with Slim Payne and because of Slim's relation to Guy Payne, might have entertained a prejudice. The inquiry in relation thereto, might have elicited information which would have formed the basis for peremptory challenge by the state, or even by the defendant, and thus would have fallen within the purview of voir dire examination, to the end, that the defendant might have a fair and impartial trial under the provisions of the Constitution, Article 2, § 20. But in the case at bar the contention herein made is without merit for the trial court sustained the objections to specific reference to Slim Payne and admonished the jury to disregard it. Then within the range of his discretion he permitted the assistant county attorney to inquire as to the Payne family generally. We believe both as a matter of inquiry were legitimate. In any event no prejudice is shown by reason thereof. In the absence of showing of prejudice the contention therefore must fail.

Next the defendant complains of the voluntary statement of Officer Aubrey Chambers in response to the question, how long have you known Guy Payne, "I have never handled Guy Payne, I mean by that I have never had any association with Mr. Payne". Defendant moved for a mistrial because of said remark, particularly that he had never handled Guy. The trial court overruled the motion for mistrial and admonished the jury that they should not consider anything other than that "he had never had any association with Guy". In his brief the defendant says the answer was not responsive. With this conclusion we agree. We are further of the opinion that an objection for that reason would have been proper but none was interposed. The defendant did not take the witness stand in his own behalf, and he urges the voluntary statement was an attempt by an experienced officer to inject into the trial the reputation of the defendant. He contends that it was equivalent to say, "Guy has been arrested many times but I have never arrested him or investigated one of his offenses". The defendant asserts the question called for a simple yes or no answer. In this he is correct, and such an answer should have been given but we do not see in this statement by innuendo the prejudice the defendant asserts it created particularly in light of the court's admonition to the jury limiting the answer to the fact that "he had never had any association with him" which in effect was negative, certainly in this part of the proceedings, in light of the clear evidence of guilt, would not constitute grounds for reversal on appeal. But the defendant says, "the county attorney suspected or rather knew from his past record that he would not attempt to prove good character", and hence this was a part of a studied plan to get the defendant's reputation before the jury, first, in the positive statement on voir dire examination to the juror, "Slim Payne

is a cousin of Guy", and then in this voluntary statement of Officer Chambers. Such statements when positive, premeditated and by design have been condemned by this court in many cases. One of the most recent, Atkins v. State, 94 Okl.Cr. 137, 231 P.2d 406, 409, wherein the officer said, "'He is the whiskey man there, if you want the truth'". In Scott v. State, 48 Okl.Cr. 7, 288 P. 999, wherein the officer said, "It is a beer joint and a bootlegging joint", and "that is where everybody buys whiskey in that end of town", and other similar statements. In numerous other cases likewise we condemned this procedure where testimony of the bad reputation of the defendant was offered by the state without the defendant having made an issue thereof. In a close case such procedure might result in a reversal. But this is not a close case. Herein the charge was that the death of the Tucker girl was by reason of drunk driving and reckless driving amounting to culpable negligence. The record shows beyond any doubt that the defendant was guilty of both drunk driving and reckless driving for which he might have been found guilty of first degree manslaughter and which the jury treated as culpable negligence returning a verdict of guilty of second degree manslaughter. No attempt whatever was made to defend against the state's case, supported by numerous witnesses, that Guy Payne was drunk and driving the automobile at the time of the commission of the alleged crime. On behalf of the defendant only two witnesses were called, one for the purpose of showing Allene Rowe Tucker's family regarded her death as an accident and that they were opposed to prosecution of the case. The other witness was called for the sole and only purpose of an attempt to discredit a witness for the state concerning a matter about which he had not been examined while he was on the stand; and bearing no relation whatever to the issues herein involved which was improper. Further than the foregoing no defense was interposed by the defendant. In view of the total lack of defense to the charge contained in the information and the abundance of evidence in support there-

of we are of the opinion that in this instance the defendant has not been deprived of any substantial right by reason of this alleged error.

Further the defendant contends that the state failed to prove venue. The record supports the contention that the state did not show venue by positive and direct proof. This issue was properly preserved herein. Swift v. State, 92 Okl.Cr. 43, 220 P.2d 300. It was brought out in the evidence from Officer Newton that he lived in Muskogee and was a squad car officer on the police department of that city. The same proof was offered by Officer Chambers who testified they were on duty in squad car No. 34 the night this crime was committed and they had occasion by reason of a radio call from the dispatcher of the police department to go to Walnut and Gibson streets and investigate an accident. They testified their investigation disclosed Guy Payne was driving the automobile in which the Tucker woman was killed. Their testimony revealed that Guy Payne was under the influence of alcohol. Officer Newton said that he could tell from Payne's speech, his breath and his walk that he was under the influence of intoxicating liquor. He further testified that there was a partly filled whiskey bottle under the foot pedals of the automobile in which the deceased woman was riding. All the foregoing testimony of Officers Chambers and Newton was insufficient standing alone to establish venue. However, on cross-examination by the defendant Officer Newton was asked, "And where were you at the time you received the call —whereabouts in the city of Muskogee?" The testimony was, "I believe I was in the 400 block on North K Street". He related that it took about 5 or 7 minutes to get to the scene of the alleged crime. Other officers testified in relation to being at the scene of the crime and the fact that they were members of the police department of the city of Muskogee. The testimony revealed that other officers of the Muskogee police department were at the scene of the crime. They were Ralph Owens, Lamon Limbird and Bill Green. The record discloses they arrived shortly

after the crime was committed. It further appears that Officer Chambers of the Muskogee Police Department was the superior officer there that night, that he directed Officers Owens and Limbird to take Guy Payne to the station, in front of which he admitted he had been drinking. It is a reasonable inference that of course they took him to the Muskogee Police Station which was their headquarters, primarily because the crime was committed within their jurisdiction. There is a further stipulated fact in the record by Mr. Garrett of counsel for the defendant, that on the following Monday, April 15, three days after the crime was committed, Mr. A. C. Davenport, Identification Officer of the Muskogee Police Department, had taken 5 pictures at the scene of the crime, all received in evidence. It is a reasonable conclusion that Officer Davenport's work as identification officer would be confined to the city limits of Muskogee. Moreover these pictures revealed wide city streets and markers such as are used only on city streets. Among said pictures are markers showing on the top thereof "Gibson and Walnut". These are the facts upon which this issue must stand or fall as measured by the principles of law governing proof of venue. In Kilpatrick v. State, 90 Okl.Cr. 276, 213 P. 2d 584:

> "Only those allegations in an indictment or information which involve the guilt of a defendant are to be proved beyond a reasonable doubt. The venue of an offense does not come within this class, but there must be some proof of venue.
>
> "Venue may be proved by circumstantial evidence."

In the body of the opinion it was further said:

> "It is solely a question of the court's jurisdiction over the particular offense alleged in the information."

In Swift v. State, supra [92 Okl.Cr. 43, 220 P.2d 302], it is said:

> " * * * and venue need not be shown beyond a reasonable doubt."

To the same effect is Vanderslice v. State, 59 Okl.Cr. 192, 57 P.2d 267; Dismore v. State, 60 Okl.Cr. 346, 44 P.2d 894; Flannigan v. State, 55 Okl.Cr. 328, 29 P.2d 989; Ford v. State, 52 Okl.Cr. 321, 5 P. 2d 170; Rodgers v. State, 50 Okl.Cr. 363, 297 P. 823; Womble v. State, 50 Okl. Cr. 108, 296 P. 515; Burton v. State, 50 Okl.Cr. 33, 295 P. 622; Hatfield v. State, 49 Okl.Cr. 41, 292 P. 1058; Neal v. State, 48 Okl.Cr. 410, 292 P. 571; Cole v. State, 34 Okl.Cr. 366, 246 P. 653; Groh v. State, 30 Okl.Cr. 396, 236 P. 435; Steele v. State, 28 Okl.Cr. 335, 230 P. 760; Edwards v. State, 25 Okl.Cr. 167, 219 P. 427; Jentho v. State, 19 Okl.Cr. 434, 200 P. 251; Arnold v. State, 15 Okl.Cr. 519, 178 P. 897. In the Steele case, supra, this court said [28 Okl.Cr. 335, 230 P. 761]:

> "It cannot be said that there is no proof of venue in this case. All the evidence on the question of venue goes to prove that the alleged crime was committed in Major county. In the absence of any proof to the contrary, we think this proof was sufficient on the question of venue."

In Ward v. State, 13 Okl.Cr. 81, 162 P. 232, it was said:

> "While it is always a simple matter, and is much the safer plan, for the state to prove venue directly and positively, yet the one essential test is whether or not the venue has in some way been proved, and if it is proved by circumstances or indirect statements which fix the venue, the requirements of the law have been met. Brunson v. State, 4 Okl.Cr. 467, 111 P. 988; Gritts v. State, 6 Okl.Cr. 534, 118 P. 673, 120 P. 669."

The Attorney General concedes there is no positive or direct proof of venue. Proof of venue could so easily have been established by positive and direct evidence. When the matter of venue was raised the assistant county attorney not only deceived himself as the Attorney General asserts but likewise deceived the court in insisting that such proof had been established when such was not the case. The assistant county attorney committed the unpardonable sin in the prosecution of a criminal case. The question having been raised both the prosecutor and the court should have insisted on

proof of venue being made even in the face of their belief that the matter had already been established. But such was not done. A sufficient amount of diligence on the part of the assistant county attorney and caution by the court would have obviated the necessity of this court having to comb the record for circumstantial evidence. Nevertheless we believe there is sufficient evidence to sustain the question of venue. All the foregoing circumstances point to but one conclusion, that the crime committed was within the jurisdiction of these officers within the city of Muskogee, and as to the location of said city the court will take judicial notice it is in the county of Muskogee. The court and jury in aid of proof of venue may take judicial cognizance of the location of cities and towns as within the location of the boundaries of certain counties. Ford v. State, 52 Okl.Cr. 321, 5 P.2d 170. We take judicial notice that the nearest towns to Muskogee are Fort Gibson, 9 miles distant and within Muskogee county, and Wagoner in Wagoner county, 14 miles away. In the time stated, 5 to 7 minutes, traveling at a reasonable speed, the officers could have reached neither of these towns, certainly not Wagoner. Likewise it is a matter of judicial knowledge that the city of Muskogee is the only municipality in that immediate vicinity that would have radio equipped police cars and a radio station and dispatcher in connection therewith. Hence we are compelled to conclude from circumstances that this crime would have occurred in no other place than in the city of Muskogee in Muskogee county, Oklahoma. It is not unreasonable to conclude that the officers did all of the foregoing things as police agents of the city of Muskogee and that these things occurred within their jurisdiction. Officers of the law in the absence of a showing to the contrary are presumed to have done their duty. Certainly we are not to presume that all these numerous things which they did were conducted outside their jurisdiction. We do not believe that such conclusion predicated upon the foregoing circumstances is unreasonable. There is no contention that the crime occurred in another county other than Muskogee county, and no proof offered by the defendant that it did not occur in Muskogee county, or that it did occur in some other county. The defendant merely relies on the proposition the record is affirmatively silent as to the place where the crime occurred. Though he may seek to ignore circumstances fixing the venue in Muskogee, this court cannot so blind itself. Particularly where under these conditions it is apparent that the court and the jurors had personal knowledge of where the crime occurred. A similar case to this upholding venue was that of Edwards v. State, supra. Therein it was said that there is a presumption that where it is apparent that the court and the jurors have personal knowledge of the places named by the different witnesses tending to show that the offense was committed within the county, that such is sufficient. Certainly such should be the rule where there is no proof whatsoever to the contrary. We do not believe that such conclusion is unreasonable in the face of the entire failure to offer proof that the crime did not occur in Muskogee county. While this is a close case on venue we believe that the foregoing circumstances are sufficient in the absence of anything to the contrary on the question of venue.

 The next point raised by the defendant is the trial court erred in permitting witness Sam Skaggs to testify whose address had never been endorsed on the copy of the information provided him. Title 22, § 303, O.S.1951. He further complains that the address had not been presented to the defendant 3 days before trial. The endorsement of additional witnesses is within the trial court's discretion in a felony case less than a capital one. Heglin v. State, 56 Okl.Cr. 364, 40 P.2d 41. No authority is cited on this point. There was no showing of the facts of surprise nor application to withdraw his announcement of ready or of the act of going to trial without objection nor was any time asked to prepare a motion showing what evidence he would offer to rebut the witness' testimony. Without such showing this contention is without merit. Shaw v. State, 53 Okl.Cr. 389, 12 P.2d 550.

The next point urged is like the last in that the defendant contends the trial court erred in permitting an unendorsed witness to testify. This witness was Lamon Limbird whose name was apparently erroneously endorsed on the information as Lamon Limboro. There is such a marked similarity between Limboro and Limbird that even an inquiry at the police station for Mr. Lamon Limboro would have disclosed the real party to have been Limbird and not Limboro. No such inquiry was made either of the police department or the county attorney's office, just as no inquiry was made from the county attorney to ascertain the address of Sam Skaggs. Under both such situations we cannot see how the defendant was prejudiced when no effort was made to locate the witnesses or to ascertain what the nature of their testimony might be. If the record herein showed this was more than a technical error of misspelling and was in the nature of an intended total failure of endorsement, and that the situation was such that upon inquiry the party's name and whereabouts could not be ascertained, we would find merit in this contention, but such is not the situation. Furthermore the testimony of the witness was largely cumulative. In addition thereto as to witness Limbird the defendant saved no exception and made no showing whatsoever as this court said was necessary in Shaw v. State, supra.

Finally the defendant complains that the argument for the prosecution was inflammatory and prejudicial. This contention due to the total lack of defense to the crime charged and the ample proof to support it might be measured by the case of Walker v. State, Okl.Cr., 214 P.2d 961, wherein we said the evidence of guilt was so clear and convincing that if no argument had been made on either side the result would have been the same, that of guilty. Moreover our examination of the argument of the state under the conditions herewith presented would not warrant a reversal of this case not only because of the great evidence of guilt but also because on an objection being interposed, in most every instance the objection was sustained and the jury admonished not to consider

the argument. Under these conditions it has been held such may not constitute reversible error. Camp v. State, Okl.Cr., 239 P.2d 1036. In fact this record discloses a remarkably fine defense of a case where there was no defense. The defendant was, in our opinion, extremely fortunate not to have been convicted of first degree manslaughter. For all the foregoing reasons, the judgment and sentence herein imposed is accordingly affirmed.

POWELL, P. J., and JONES, J., concur.